Louis A. SCHERFF, Plaintiff-Appellee-Cross-Appellant,

v.

MISSOURI–KANSAS–TEXAS RAILROAD CO., Defendant-Appellant-Cross-Appellee.

NORTHERN NATURAL GAS COMPANY, Third-Party Plaintiff-Appellee-Cross Appellant,

v.

SHAMROCK CONSTRUCTORS, INC., Third-Party Defendant-Appellee.

No. 30851.

United States Court of Appeals, Fifth Circuit.

Sept. 8, 1971.

Rehearing Denied Nov. 8, 1971.

Elmer H. Parish, Fillmore, Parish, Martin, Kramer & Fillmore, Wichita Falls, Tex., for Missouri-Kansas-Texas Railroad Co.

George W. McCleskey, Harold O. Harriger, Lubbock, Tex., Thomas N. Wright, Thomas A. Wagoner, Omaha, Neb., Nelson, McCleskey, Harriger & Brazill, Lubbock, Tex., for Northern Natural Gas Co.

James C. Allums, Jr., James A. Williams, Bailey, Williams, Weber & Allums, Dallas, Tex., for Shamrock Constructors, Inc.

G. E. Pletcher, Helm, Jones & Pletcher, Houston, Tex., for Louis A. Scherff.

Before O'SULLIVAN *, THORNBERRY and DYER, Circuit Judges.

DYER, Circuit Judge:

Plaintiff Scherff recovered damages from his employer, Missouri-Kansas-Texas Railroad Company, under the Federal Employers Liability Act for personal injuries sustained by him while performing his duties as a conductor during a switching operation. The Railroad's third party claim against Northern Natural Gas Company, based on contractual indemnity, was denied. Northern's claim against Shamrock Constructors, Inc., based on contractual indemnity, was likewise denied.

Railroad appeals, specifying as errors the District Court's denial of judgment against Northern on the contractual liability of Northern; the excessiveness of the damages awarded; the receipt in evidence of the Railroad's operating rules and the submission of issues concerning them to the jury.

Scherff appeals from the reduction of his damages by ten percent attributable to his negligence contending that there was a violation by the Railroad of the Safety Appliance Act which bars the Railroad from asserting contributory negligence.

Northern appeals, asserting that it is entitled to a judgment against Shamrock for attorneys' fees and expenses and further asserting that if Northern is held. liable under the indemnity agreement between it and Railroad, then under the indemnity agreement between Northern

---

* Senior Judge, Sixth Circuit, sitting by designation.

and Shamrock the latter is liable to Northern.

We affirm the judgment in favor of Scherff as reduced. We reverse the judgment denying Railroad contractual indemnity against Northern. We affirm the judgment denying Northern contractual indemnity against Shamrock.

Northern was building a pipeline near Knowles, Oklahoma. It purchased pipe, three feet in diameter, from United States Steel Corporation at Orange, Texas. The pipe was transported by Southern Pacific Company, as originating carrier, to Denison, Texas, and there was interchanged with Railroad for transportation to Knowles, as final destination, where it was to be delivered to Northern as consignee. Northern needed to store the pipe temporarily at Knowles and therefore entered into an agreement with Railroad which provided, *inter alia*:

In consideration of Missouri-Kansas-Texas Railroad Company, hereinafter called "Railroad Company," permitting the undersigned hereinafter called "permittee," to temporarily store approximate [sic] 105 carloads of pipe (hereinafter called material) for shipment by or which have been shipped to said Permittee over the lines of said Railroad Company, upon the right-of-way at Knowles, in the State of Oklahoma, during the period beginning February 1, 1968, and ending April 30, 1968, said Permittee hereby covenants and agrees to and with said Railroad Company as follows, to-wit:

1. To pay as rental for the use of said premises, the sum of $36.00 during the term of this agreement.

2. To store said material in such manner as will not at any time be a source of danger to said Railroad Company's premises or any persons or person, property or facilities upon or about the same or interfere with the safe operation of said Railroad.

\* \* \* \* \* \*

5. Permittee, for himself, or itself, and for his, or its heirs, successors, and assigns, and for his, or its officers, agents, servants, employees and contractors, does hereby assume (1) all liability for and risk of injury to and death of all persons whomsoever, including but not limited to injury or to death of Permittee, and the officers, agents, servants, employees, contractors, licensees, or invitees of the parties hereto or either of them, \* \* \* in any manner caused by, arising from, growing out of, or incident to the storing, storage, or presence of the aforesaid material on or adjacent to Railroad Company's premises, \* \* \* and Permittee, for himself, or itself, and his, or its heirs, successors and assigns hereby assumes said risks, whether such injury to or death of persons or damage to or loss or destruction of property is caused by or contributed to in whole or in part by negligence of Railroad Company, its officers, agents, or employees, or arises under any Workmen's Compensation Act, or the Federal Employers Liability Act, or otherwise; and, said Permittee for himself, or itself, and for his or its heirs, successors, and assigns, and for his, or its agents, servants, employees and contractors, does hereby agree to protect, defend, indemnify and hold harmless Railroad Company from, and to reimburse Railroad Company for, any and all liability and damages arising out of the risks herein assumed by Permittee, including claims, suits, judgments, costs, attorney fees, and all other expenses incurred by Railroad Company in defense of any claims, causes of action, or judgment for any liability assumed by Permittee herein.

Shamrock was employed by Northern to unload the pipe from the railroad cars and stack it. No one from Northern gave Shamrock any instructions on how to unload or stack the pipe. Before the performance of any work, Northern and Shamrock had entered into a contract which provided, *inter alia*:

Article XII—General Indemnity
Contractor shall, except as otherwise expressly provided herein, indemnify,

protect and save Northern, its directors, officers and employees harmless from and against any and all actions or causes of action, claims, demands, liabilities, loss, damage, injury, cost or expense of whatever kind or nature, including costs of litigation, attorney fees and reasonable expenses in connection therewith, brought or presented by any person, firm, or corporation whatsoever, (including but not limited to, third parties, employees of Northern, employees of Contractor or of any subcontractor, and their dependents and person representatives) for injuries to or the death of any person, or damage to or loss of property alleged or claimed to have been caused by, or to have arisen out of or in connection with, or to be incidental to any of the work, including guarding of the work, whether or not such loss, injury or damage shall be valid or groundless, and Contractor agrees that in case Northern or any agent, representative or employee of Northern or its or their heirs, successors, or assigns, shall be made defendant in any suit, action or proceeding wherein it is sought to recover from Northern or any of its agents, representatives or employees, damages on account of such personal injuries or property loss or damage, Contractor, immediately upon notice from Northern, shall be bound and obligated to assume the defense thereof, including settlement negotiations, and shall pay, liquidate, discharge and satisfy any and all settlements, judgments, awards or expenses resulting from or arising out of such injuries, death or damages without reimbursement from Northern. It is understood and agreed by Contractor that in case Northern is made defendant in any such suit or action, and Contractor fails or neglects to assume the defense thereof, after having been notified so to do by Northern, that Northern may comprise and settle or defend any such suit or action, and Contractor shall be bound and obligated to reimburse Northern for the amount expended by it in settling and compromising any such claim, or in the amount expended by Northern in paying any judgment rendered therein, together with all reasonable attorney's fees incurred by Northern by reason of its defense or settlement of such claim. Any judgment rendered against Northern, or amount expended by Northern in compromising or settling such claim shall be conclusive as determining the amount for which Contractor is liable to reimburse Northern hereunder.

On February 18, 1968, the day of plaintiff's injury, the train crew was in the process of switchng thirty-two empty cars from the house track and the main line so that cars loaded with additional pipe could be placed for unloading. Pipe was stacked on the Railroad's right-of-way about twelve feet high on both sides of the house track. When the train crew was in this area engaged in switching operations "the pipe just blocked out everything." The brakeman was "in a virtual tunnel" and could not see Scherff or the conductor or fireman. Scherff was "covered up by pipe—he was in there blind."

After Scherff made connections on the empty cars that were north of the switch, he went to a grade crossing to flag automobiles. He could not see the train crew or the house track because of the stacked pipe. While the train was motionless he heard an air leak and proceeded to investigate. While doing so, and before he reached the leak, the train started moving. Unable to see the crew or signal the engineer to stop because of the pipe and a bulkhead car between his position and the engine, Scherff tried to climb over a flatcar to signal the engineer. While attempting to traverse the flatcar he was knocked off balance by a movement of the car and fell under the wheels of the train, sustaining severe injuries.

In explaining his predicament Scherff said: "If the pipe hadn't been there, I could have walked out a few steps and gotten around the bulkhead car, but I

couldn't, I was in a well * * * I was boxed in. I was in a hole."

After the accident the air hose with a leak in it was found. Although the air hoses were connected from car to car the air brake system was not being used during the switching operation—only the engine brakes were in use.

The case was submitted to the jury on special issues. Insofar as they are pertinent to our consideration of this appeal, the jury found: that the Railroad was negligent in permitting Northern to store pipe along the right-of-way in such a manner as to obscure the view of the crew; in moving the cars while Scherff was out of view in violation of a rule of the Railroad; in the failure of the Railroad to keep a proper lookout for Scherff; and in moving the train without knowing the whereabouts of Scherff. The jury found that "one or more or all of such acts" played a part "no matter how small, in actually bringing about Scherff's injuries."

There was a jury finding that Scherff was ten per cent negligent in attempting to cross from one side of the train to the other over a moving flatcar, and to that extent he contributed to the injuries sustained by him.

Special issue No. 11 posed the following question which the jury answered in the negative:

Do you find from a preponderance of the evidence that the injury of plaintiff Scherff was in any manner caused by, arose from, or grew out of or was incident to the work of Northern or Shamrock storing, the storage, or the presence of pipe in question on or adjacent to the Railroad's premises?

The jury also found that neither Northern nor Shamrock was negligent in stacking the pipe close to the tracks or so as to obstruct the view of the Railroad's employees, and that the Railroad approved of the manner and place of stacking the pipe.

Finally, Special Issue No. 21 asked:

Do you find from a preponderance of the evidence that the injuries of Scherff were caused by or arose out of or in connection with or incidental to the work of Shamrock in handling the pipe involved herein?

The jury's response to this issue was "No."

*Diminishment of Scherff's Recovery.*

Scherff does not and could not attack the jury's finding that he was contriburorily negligent to the extent of ten percent and that ordinarily this would properly diminish his recovery by that percentage. He does not argue, nor could he, that air was required to be used for braking in a switching movement. It is undisputed that the air was in fact not being used. The engine brakes only were being utilized.

While it is true that safety appliances *in use* on cars even though not required by the Safety Appliance Act,[1] are covered by the Act's protection, *see* Shields v. Atlantic Coast Line R. R., 1956, 350 U.S. 318, 324, 76 S.Ct. 386, 391, 100 L.Ed. 364, the Act does not require the use of air brakes in switching operations. United States v. Northern Pacific Ry., 1920, 254 U.S. 251, 254–255, 41 S.Ct. 101, 65 L.Ed. 249; United States v. Erie R. R., 1915, 237 U.S. 402, 408, 35 S.Ct. 621, 59 L.Ed. 1019.

The District Court was correct in holding that the provisions of the Safety Appliance Act were inapplicable where, as here, air was not required to be used, was in fact not being used, and the only relevance of a leak in the air hose was that it attracted the attention of Scherff, who, while attempting to investigate it, contributed to his injuries by his own negligence.

*The Contractual Indemnity Owed by Northern to the Railroad.*

Northern contends that it had no contractual indemnity liability to Railroad because (1) there was a fact issue concerning whether there existed any causal connection between Scherff's in-

---

1. 45 U.S.C.A. § 1 et seq.

juries and the presence of pipe which was resolved by the jury in Northern's favor, in answer to Special Issue No. 11, and (2) in any event the contract for indemnity was unenforceable because it contravened public policy.

■ Railroad responds that the ·District Court erred in submitting Special Issue No. 11 because the Court did not track the language of the contract but limited the question to tort liability by reference to the work of Northern and Shamrock. Furthermore, Railroad contends that the jury's answer to Special Issue 1(b) that the Railroad was negligent in permitting Northern to store pipe along the right-of-way in such a manner as to obscure the view of the crew established the contractual liability of Northern. Finally, Railroad assigns error in the refusal of the District Court to enter judgment against Northern on contractual liability.[2]

Manifestly the jury found, on substantial evidence, that Railroad was guilty of negligence which was a proximate cause of Scherff's injuries and that Northern and Shamrock were not guilty of negligence. Railroad does not dispute this finding or assign it as error. But this is only a half-loaf and, of course, is not decisive of the contract indemnity liability question. The District Court's judgment in favor of Northern in the third-party action by Railroad had to be based upon a fact finding that there was no causal connection between Scherff's injuries and the storage or presence of the pipe, and thus was without the coverage of the indemnity contract.

We assume that the District Court in entering judgment for Northern on the third-party complaint, relied upon the answer to Special Issue No. 11. If the Court, by the question is propounded in this Special Issue, intended to obtain from the jury a fact finding upon which the court could make a determination of coverage under the indemnity agreement, we think it failed in its purpose. The indemnity liability of Northern was not limited in the agreement to injuries sustained by employees of the Railroad due to the work of Northern in storing, etc. We conclude that Special Issue No. 11 was, at best, constructed to elicit an answer concerning Railroad's tort, not contractual, liability and, at worst, was simply ambiguous.

■ But more fundamental is the record showing that there was no fact issue to submit to the jury concerning whether there was a causal connection between the storage and presence of pipe and Scherff's injuries. As we have previously briefly recounted, it is undisputed that the storage of the pipe along the right-of-way effectively obscured the view of the train crew and Scherff, and that this was a proximate cause of his injuries. Since the agreement between Railroad and Northern explicitly provided in clear and unequivocal language that Northern would indemnify Railroad under these circumstances "whether * * * death of persons * * * is caused by or contributed to in whole or in part by negligence of Railroad," there can be no doubt that the parties intended for Northern to shoulder the loss. The agreement fully meets the requirement that

> a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties. This principle, though variously articulated, is accepted with virtual unanimity among American jurisdictions.

United States v. Seckinger, 1970, 397 U. S. 203, 90 S.Ct. 880, 25 L.Ed.2d 224 (Footnote omitted). Thus it was not only the court's prerogative but duty to

---

2. Railroad also faults the District Court for refusing to permit the Railroad to introduce evidence before the jury concerning the contractual liability of Northern. We agree with the District Court that it was the province of the jury to determine the facts, and it was the province of the court to construe the coverage of the contract and to apply that contract to the facts as found by the jury. See, Lawrence v. United States, 5 Cir. 1967, 378 F.2d 452, 455.

apply the uncontroverted facts to the indemnity agreement. The submission of this question of contract construction to the jury was therefore unwarranted. The court had no alternative but to determine that indemnity liability rested upon Northern unless the agreement contravened public policy.

Where, as here, Railroad, as lessor and not as a common carrier, refused to permit Northern, as lessee, to store pipe along the right-of-way without obtaining Northern's agreement for indemnification, we find no public policy detriment to the enforcement of such an agreement. In Santa Fe, P. & P. Ry v. Grant Bros., 1913, 228 U.S. 177, 184–185, 33 S.Ct. 474, 476–477, 57 L.Ed. 787, the court succinctly pointed out:

It is the established doctrine of this court that common carriers cannot secure immunity from liability for their negligence by any sort of stipulation [New York C.] Railroad Company v. Lockwood, 17 Wall. 357 [21 L.Ed. 627]; Liverpool [& G. W.] Steam Co. v. Phenix Insurance Co. [(The Montana)], 129 U.S. 397 [32 L.Ed. 788, 9 Sup.Ct.Rep. 469]; Baltimore & Ohio & c. Railway Co. v. Voigt, 176 U.S. 498, 507 [44 L.Ed. 560, 565, 20 Sup.Ct. Rep. 385]; Knott v. Botany [Worsted] Mills, 179 U.S. 69, 71 [45 L.Ed. 90, 93, 21 Sup.Ct.Rep. 30]; The Kensington, 183 U.S. 263, 268 [46 L.Ed. 190, 193, 22 Sup.Ct.Rep. 102]. The rule rests on broad grounds of public policy, justifying the restriction of liberty of contract because of the public ends to be achieved. The great object of the law governing common carriers was to secure the utmost care in the rendering of a service of the highest importance to the community. A carrier who stipulates not to be bound to the exercise of care and diligence "seeks to put off the *essential duties* of his employment." It is recognized that the carrier and the individual customer are not on an equal footing. * * * For these reasons, the common carrier, in the prosecution of its business as such is not permitted to drop its character and transmute itself by contract into a mere bailee, with right to stipulate against the consequences of its negligence.

Manifestly, this rule has no application when a railroad company is acting outside the performance of its duty as a common carrier. In such case, it is dealing with matters involving ordinary considerations of contractual relation; those who choose to enter into engagements with it are not at a disadvantage; and its stipulations even against liability for its own neglect are not repugnant to the requirements of its public service. The rule extends no further than the reason for it. It is apparent that there may be special engagements which are not embraced within its duty as a common carrier, although their performance may incidentally involve the actual transportation of persons and things, whose carriage in other circumstances might be within its public obligation. Baltimore & Ohio & c. Railway Co. v. Voigt, 176 U.S. 498 [44 L.Ed. 560, 20 Sup. Ct.Rep. 385], and cases cited; Northern Pacific Railway Co. v. Adams, 192 U.S. 440 [48 L.Ed. 513, 24 Sup.Ct.Rep. 408]; Long v. Lehigh Valley R. R. Co., C.C.A., 2d Circuit, [65 C.C.A. 354] 130 Fed.Rep. 870.

The courts of both Texas and Oklahoma have held that it is not violative of public policy for a railroad common carrier, to require indemnification from a lessee for injury to persons or property which might occur by reason of the negligence of the railroad. Missouri-Kansas-Texas Railway Company of Texas v. Carter, 1902, 95 Tex. 461, 68 S.W. 159; Colorado Milling & Elevator Co. v. Chicago, R. I. & P. R. Co., 10 Cir. 1967, 382 F.2d 834. Indeed it is generally held that where a railroad is not acting as a common carrier an indemnity contract which absolves the indemnitee from liability for its own negligence is not against public policy. It simply represents an adjustment of the private relations between the carrier and its indemnitor but does not alter the carrier's

duty to the public as a common carrier. Chicago, R. I. & P. R. R. v. Chicago, B. & Q. R. R., 7 Cir. 1971, 437 F.2d 6, cert. denied 402 U.S. 996, 91 S.Ct. 2173, 29 L.Ed.2d 161; Jacksonville Terminal Co. v. Railway Express Agency, Inc., 296 F.2d 256; Inland Container Corp. v. Atlantic Coast Line R.R., 5 Cir. 1959, 266 F.2d 857; Bedal v. Hallack and Howard Lumber Co., 9 Cir. 1955, 226 F.2d 526.

We take particular note of the fact that in this case Railroad does not seek to exempt itself from liability. The agreement provides for indemnification and not for an exemption from or a limitation of liability. Railroad is liable, but Northern has agreed to indemnify Railroad for the damages resulting from the injuries to Scherff. If Northern is, for any reason, unable to pay, Railroad continues to be liable to Scherff.

### The Contractual Indemnity Agreement between Northern and Shamrock

█ Northern asserts that under the indemnity agreement between Northern and Shamrock Northern is entitled to a judgment over against Shamrock for Northern's attorneys fees in the amount of $20,000 and costs of $2,363.64 expended by Northern in connection with its defense of the claims of Scherff and Railroad. Northern further argues that should it be held liable to Railroad then Northern should in turn recover in full against Shamrock. Recognizing that the jury found that Scherff's injuries were not caused by the work of Shamrock in handling the pipe, Northern insists that the test is not *causation*, but rather depends only on the *allegation* of a claim. Northern's contention is based upon the proposition that "Shamrock's indemnity obligation is conditioned solely upon whether or not plaintiff's injuries were *alleged or claimed to have been* incidental to any of the work of Shamrock." No authority is cited by Northern to sustain such an interpretation of an indemnity agreement and none can be found because it borders on the absurd-

ity to contend that a *mere allegation* of a claim by Railroad against Northern, without more, is sufficient to trigger liability on Shamrock.

Northern's liability to Railroad is contractual, not tortious. It is perfectly obvious that Shamrock and Northern did not intend, nor does the agreement provide, that Shamrock would indemnify Northern for any liability that might arise out of a contract entered into between Northern and other parties. We conclude that the District Court was correct in denying Northern indemnity against Shamrock.

The judgment of the District Court in favor of Scherff as reduced is affirmed. The judgment in favor of Northern on Railroad's third-party claim is reversed with directions to enter judgment in favor of Railroad. The judgment in favor of Shamrock on Northern's third-party claim is affirmed.

Affirmed in part, reversed in part, and remanded with directions.

THORNBERRY, Circuit Judge (concurring in part, dissenting in part):

I concur in that part of the majority opinion affirming the judgment of the court below as to the inapplicability of the Safety Appliance Act to Scherff's claim.

I dissent, however, from the conclusion that Northern's indemnity contract is not, as applied to the facts of this case, void as against public policy. The majority recognizes the established doctrine that public policy forbids common carriers to contract for indemnity against their own tort liability when they are performing either a public or a quasi-public duty such as that owing to a shipper, passenger or servant. Yet the majority holds that this public policy has no application to the instant case because when the Railroad entered into this leasing agreement with Northern it was *contracting* as a private party and not as a common carrier. By thus focusing on the Railroad's posture as a lessor in its contractual relationship with

Northern, the majority avoids the public policy against such contracts. In my opinion, the majority's focus is misplaced. If we are to effectuate this public policy meaningfully, we should focus on the posture of the Railroad at the time the accident occurs. Clearly, in this case, the Railroad was functioning as a common carrier when the accident occurred, and the employee Scherff was injured as a result of the Railroad's negligence while acting in that capacity. The fact that the Railroad was acting as a lessor when it leased its right-of-way to Northern should be immaterial if one result of that lease is to interfere with the Railroad's performance of its duties as a common carrier. In a recent case, the Indiana Appellate Court, en banc, discerned this distinction very well. Pennsylvania R. R. v. Kent, 136 Ind.App. 551, 198 N.E.2d 615, 14 A.L.R.3d 434 (1964). The *Kent* case involved a railroad indemnity agreement wherein the Railroad leased some of its property adjacent to its tracks and provided cars on the track for the loading and shipping of the lessee's goods. The lessee had agreed to indemnify the Railroad for all loss which the Railroad might suffer resulting from the injury to the lessee's employees who were at the time of the injury upon or about the cars or tracks in connection with the lessee's business. An employee of the lessee was injured as a result of the Railroad's negligence while working on a railroad car that was standing on the tracks adjacent to the leased premises. The Railroad, in seeking to enforce the indemnity agreement, argued that it was acting as a private party when it executed the lease and not as a common carrier. The court refused to accept his argument, stating, "We are not persuaded * * * that the appellant railroad company in the instant case, by the simple device of the execution of a real estate contract, could change the character of its operation from that of a common carrier to that of a private carrier." 198 N.E.2d at 14 A.L.R.3d at 442–43. The court went on to say that "to permit such a carrier

to avoid its obligation and duty to exercise due care on the ground that in the particular instance it allegedly contracted as a private party * * * would be * * * the equivalent of lending our sanction and approval to the evasion of its legal responsibilities, and would amount to complete acquittance of the appellant's liability for its own torts." 198 N.E.2d at 621, 14 A.L.R.3d at 443–44. I agree with this reasoning and I think it should be applied to the instant case.

I also dissent from the majority's conclusion that Northern's indemnity contract with Shamrock does not apply to this case. The majority correctly states that "Northern's contention is based upon the proposition that 'Shamrock's indemnity obligation is conditioned solely upon whether or not plaintiff's injuries were *alleged or claimed to have been* incidental to any of the work of Shamrock.'" The majority rejects this contention because "no authority is cited by Northern to sustain such an interpretation of an indemnity agreement and none can be found because it borders on the absurdity to contend that a *mere allegation* of a claim by Railroad against Northern, without more, is sufficient to trigger liability on Shamrock."

I do not think Northern needs to cite any more authority to enforce its contract with Shamrock than the language of the contract itself. In clear language that contract provided that Shamrock

shall * * * indemnify, protect and save Northern * * * harmless from and against any and *all actions* or causes of action, claims, demands, liabilities, loss, damage, injury, cost or expense of *whatever kind or nature, including costs of litigation, attorney fees and reasonable expenses in connection therewith,* brought or presented by *any person,* firm, or corporation whatsoever, (including, but not limited to, third parties, employees of Northern, employees of * * * [Shamrock] or of any subcontractor, and

their dependents or personal representatives) *for injuries to* or the death of *any person,* or damage or loss of property *alleged or claimed to have been caused by, or to have arisen out of or in connection with, or to be incidental to any of the work* * * * *whether or not such loss, injury or damage shall be valid or groundless,* and [Shamrock] * * * agrees that in case Northern * * * shall be made Defendant in any suit * * * wherein it is sought to recover from Northern * * * damages on account of * * * personal injuries * * * [Shamrock] shall be bound and obligated to reimburse Northern * * * in the amount expended by Northern in paying any judgment rendered therein, together with all reasonable attorney's fees incurred by Northern.

The majority additionally declines to apply Shamrock's indemnity contract to this case because "the agreement [does not] provide that Shamrock would indemnify Northern for any liability that might arise out of a contract entered into between Northern and other parties." It is true that the agreement does not, in so many words, cover contracts entered into between Northern and other parties. But the agreement does cover "all actions * * * *of whatever kind or nature* * * * brought by any person, firm or corporation *whatsoever,* (including * * * third parties * * *)." I think this language clearly would cover an action against Northern for indemnity against a personal injury claim.

## ON PETITION FOR REHEARING

### PER CURIAM:

It is ordered that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied.

THORNBERRY, Circuit Judge (dissenting):

I dissent from the denial of Northern Natural Gas Company's petition for rehearing for the reasons set out in my original dissent from the majority opinion in this case.