Olen **LIRETTE**, Plaintiff,

v.

**POPICH BROS. WATER TRANSPORT, INC.**, Defendant-Appellee,

and

**AMERICAN EMPLOYERS INSURANCE COMPANY**, Third-Party Defendant-Appellee,

v.

**OTTO CANDIES, INC.**, Third-Party Defendant-Appellant.

No. 80–3929
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 7, 1983.

See also, 5th Cir., 660 F.2d 142.

---

**18.** Green's testimony, the only evidence arguably even touching on the "Hunsaker" period, does not even mention the light.

Christopher Tompkins, A. Wendel Stout, New Orleans, La., for plaintiff.

Terriberry, Carroll, Yancey & Farrell, Rufus Harris, III, C. Gordon Starling, Jr., New Orleans, La., for Popich & Am. Emp.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This is a sequel to Lirette I[1] in which, after settlement with his Jones Act employer, Popich, we affirmed the District Court's judgment denying recovery to Lirette against Exxon and Candies.[2] In the same judgment Exxon was granted recovery for its attorneys' fees and expenses against Po-

pich (and its insurer, American Employers Insurance Co.), and Candies (and its insurer, Insurance Company of North America). This judgment was not appealed. Responding to Candies' motion to reopen[3] that part of the case, the court denied Candies' claim for indemnity against Popich and its insurer. This is the subject of Lirette II.

Lirette, the initial plaintiff, was the captain of the M/V CHIEF THUNDER HORSE, owned and operated by Popich and time chartered to Candies who, in turn, time chartered the vessel to Exxon.

The case turns primarily on the contracts among the parties; (i) the charter between Popich, as owner, and Candies, as charterer and (ii) the charter between Candies and Exxon.

The charter (Part V, third paragraph) between Popich, as owner, and Candies, as charterer, provided that Popich, the owner, would indemnify and hold Candies, the charterer, *and* Exxon harmless from injury (or death) claims by Popich's employees unless caused by the sole negligence of Candies, the charterer.[4]

The charter between Candies and Exxon required Candies to indemnify Exxon against claims for injuries (or death) of Exxon's employees or employees of parties other than Candies resulting from willful or negligent acts of Candies or its agents, even though arising from the joint/concurrent negligence of Exxon, its agents, or unseaworthiness of any vessel of Candies or Exxon.[5]

---

1. *Lirette v. Popich Bros. Water Transport, Inc.,* 660 F.2d 142 (5th Cir.1981).

2. Although expressly exonerated, Candies, in fact, was not sued by Lirette. Nevertheless Candies formally opposed Lirette's motion for new trial.

3. The court's original judgment omitted any reference to or decision on Candies' cross-claim against Popich and its insurer.

4. Owner [Popich] agrees to indemnify and hold Charterer [Candies], its affiliated companies [Exxon], and anyone for whom the vessel may be working harmless from any claims or suits resulting from injury or damage to Owner's [Popich's] employees, Charterer's

[Candies'] employees or third persons or property arising out of, or in any way connected to the operation of the vessel under this charter, unless caused by the sole negligence of Charterer [Candies], its agents or employees.

5. The charter provided:
[Candies] agrees to protect, indemnify and hold harmless [Exxon] its agents, servants and employees, from and against all claims, demands and causes of action of every kind and character arising in favor of [Exxon's] employees or third parties (third parties being defined for purposes of this provision as any party other than an employee of [Exxon] or an employee of [Candies] ) for injury to or

As the litigation developed, Lirette made Exxon an additional defendant. Exxon then filed a third-party complaint against Candies seeking indemnity, attorney's fees, and costs.[6] Candies formally tendered the defense of this third-party complaint to Popich. Following Exxon's third-party claim, Candies and Exxon tendered the defense to Popich whose qualified offer of defense was declined by Exxon and Candies.[7]

The trial court on reconsideration again denied Candies' claim against Popich essentially on the ground that (i) Exxon's claim against Candies was based on a separate contract which covers (ii) tortious liability with no protection for liability arising out of a contract between Candies and Exxon.[8]

Although there were two separate contracts, there is no dispute that at the time of the Popich/Candies charter it was contemplated that Candies would in turn charter or contract with Exxon, for the use of M/V CHIEF THUNDER HORSE.[9] This is variously described as the contemplation

---

death or illness of persons or loss of or damage to property in any way resulting from the willful or negligent acts or commissions of [Candies], [Candies'] agents, employees, representatives, or its subcontractors, whether or not such personal injury, illness, death or loss of or damage to property arose out of the joint and/or concurrent negligence of [Exxon] its agents, employees or representatives and/or the unseaworthiness of any vessel of [Candies] or [Exxon].

6. Just what is meant is obscure but Candies' brief states that Exxon also "tendered Candies to plaintiff within the meaning of Rule 14(c)."

As far as we can determine, the plaintiff's complaint—as to which there was diversity between Lirette and Exxon, with a formal demand for a jury trial—based on the Jones Act and the General Maritime Law, did not expressly contain a Rule 9(h) statement identifying the claim as an admiralty or maritime claim for the purposes of Rules 14(c), 38(e), or 82. Rule 14(c) provides:

(c) *Admiralty and Maritime Claims.* When a plaintiff asserts an admiralty or maritime claim within the meaning of Rule 9(h), the defendant ..., as a third-party plaintiff, may bring in a third-party defendant who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction.... In such a case the third-party plaintiff may also demand judgment against the third-party defendant in favor of the plaintiff, in which event the third-party defendant shall make his defenses to the claim of the plaintiff as well as to that of the third-party plaintiff in the manner provided in Rule 12 and the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff.

7. Through counsel's letter, Popich stated it would "undertake the defense of Exxon" but that "this defense is limited to the negligence of Popich ... and to the unseaworthiness of the [vessel]. This defense does not include possible acts of negligence by Exxon." This quali-

fied offer of defense was declined primarily on the ground, credited by the trial judge on the basis of *Storm Drilling Co. v. Atlantic Richfield Corp.,* 386 F.Supp. 830 (E.D.La.1974), that this would involve Popich in unacceptable conflicts.

The trial court reasoned:
Popich, Candies and their insurers refused to tender an unqualified defense. Since each of the defendants was, at some point, attempting to prove that he was not solely negligent, Exxon—had it accepted the tendered defense—would have placed itself in the hands of an attorney who was subject to serious ethical strain.... This Exxon was not obliged to do.

There was such a potential conflict here. On the one hand, it was in Popich's best interest to show that Exxon's negligence was not vessel negligence or was negligence which would not involve Popich. On the other hand, it was in Exxon's best interest to establish that if there was negligence, it was negligence as a vessel owner or operator thus making available the indemnity agreement contained in the Popich/Candies charter. (*See* note 4, *supra*).

This Court recognizes these principles. *Ezell v. Hayes Oilfield Const. Co., Inc.,* 693 F.2d 489 at 494 (5th Cir.1982).

8. The Court stated:
The Court holds that the 'Time Charter Agreement', § V ¶ 3 [*see* note 4, *supra*] is inapplicable as between Candies and the cross-defendants because Exxon's claim against Candies was based on a separate contract [*see* note 5, *supra*]. The indemnity clause on which Candies relies covers tortious liability and does not provide protection for liability arising out of a contract entered in between Candies and Exxon, *see Scherff v. Missouri-Kansas-Texas Railroad Co.,* 449 F.2d 23, 30 (5th Cir.1971).

9. Part V, Insurance and Indemnity, of the Popich/Candies charter expressly provided that Candies and Exxon "shall be named as an additional insured hereunder and underwriter's rights of subrogation against them are waived." [*see* Exhibit No. 8, part V]

that Candies would in turn "broker the vessel" to Exxon for its use. This was recognized by Popich, Candies and Exxon as their respective counsel jockeyed in tender and denial of defense. Thus Exxon called upon both Popich and Candies to defend Lirette's claim and Candies separately tendered defense to Popich.

This fact, this relation of the parties, and the unappealed judgment holding Candies, Popich and their insurers liable for all of Exxon's claim—and for which both Popich and Candies remain fully responsible without regard to the trial judge's basis therefore—eliminates many of the problems which Popich conjures up. The first and foremost is the contention that this Court's earlier land-based holding in *Scherff v. Missouri-Kansas-Texas Railroad Co.*, 449 F.2d 23 (5th Cir.1971) followed now by its more recent waterborne decision in *Corbitt v. Diamond M Drilling Co.*, 654 F.2d 329 (5th Cir.1981) insulates Popich from indemnity liability to Candies because the payment it is held liable to make to Exxon is based upon a contract between Exxon and Candies with which Popich had no apparent concern.

Here Popich in the Popich/Candies charter undertook (*see* note 4 *supra*) to indemnify not only Candies but Exxon as well. In Candies' claim over, Popich was not, as in *Corbitt*, being subjected to a liability arising from and imposed by a completely separate contract between two outsiders. Rather, it was called upon to make good its contractual obligation to hold Candies (and Exxon) harmless from claims, suits or damage "arising out of, or in any way connected [with] the operation of the vessel under this charter." Popich's obligation to reimburse

Candies for amounts due Exxon arose, not because of the separate agreement Candies had with Exxon, but because of Popich's express undertaking to make good to Exxon all such losses. Candies acting as a conduit did not alter that obligation.

Next, it eliminates any difficulty over the construction of the Candies/Exxon charter limiting indemnity to "willful or negligent acts" of Candies (*see* note 5, *supra*). The problems and liabilities are cast in operational, not legalistic terms. Only three things are required to trigger Popich's obligations to Candies, to Exxon, or both: (i) injury (death) of a Popich employee and a claim therefor, (ii) which arose "out of, or in any way connected [with] the operation of the vessel under [the] charter" and (iii) resulting expense or financial damage.[10] With no possible doubt on item (i) or (iii) none can be found in fact as to (ii). Unlike the suggestion urged by Popich, that Exxon's damage which Candies had to reimburse was occasioned by a contract between Exxon and Candies, the district court record in this and *Lirette I* reflects that all of Exxon's losses came about because of Lirette's claim. That claim was bottomed-on the navigation, operation and use of M/V CHIEF THUNDER HORSE and actions of Popich, as owner, and Exxon, as user, which were asserted to be negligent.

 Since indemnity is triggered by claims or suits "resulting from injury or damage to [Popich's] employees", the contractual obligation is operationally prescribed with no distinction being made between so-called contractual or so-called tortious liability. The duty to indemnify and hold harmless includes the payment of costs and attorney's fees.[11]

---

10. The possible item (iv) "unless caused by the sole negligence of charterer [Candies]" is non-existent in view of the trial court's holding of Candies' non-liability to Lirette.

11. An indemnity clause and a maritime contract are interpreted according to federal maritime, rather than state, law. *See Corbitt v. Diamond M Drilling Co.*, 654 F.2d 329, 332 (5th Cir.1981); *M.O.N.T. Boat Rental v. Union Oil Co.*, 613 F.2d 576, 579–80, n. 6 (5th Cir.1980). And in a maritime contract, words of indemni-

fication are given their plain meaning unless the provision is ambiguous. *Corbitt v. Diamond M Drilling Co., supra; Roberts v. Williams-McWilliams Co.*, 648 F.2d 255, 264 (5th Cir.1981). The duty to indemnify and hold harmless includes costs and attorney's fees. *Olsen v. Shell Oil Co.*, 595 F.2d 1099, 1103 (5th Cir.1979); *Cormier v. Rowan Drilling Co.*, 549 F.2d 963, 971 (5th Cir.1977); *Signal Oil & Gas Co. v. Barge W–701*, 654 F.2d 1164, 1177–78 (5th Cir.1981); *Hobbs v. Teledyne Movible Offshore, Inc.*, 632 F.2d 1238, 1241 (5th Cir.1980).

▮ The indemnity agreement running to the benefit of both Candies and Exxon being adequate in scope to cover all of Exxon's losses, it is our conclusion that the district court was in error in not granting such relief to Candies against Popich.[12]

REVERSED and REMANDED.

Popich's contention that the lack of the word "defend" exonerates it from liability is frivolous. The duty to indemnify by paying attorney's fees incurred in defending an action has been found in clauses using broad language calling for indemnification and hold harmless without the inclusion of the magical language "defend." *See, e.g., Signal Oil & Gas Co. v. Barge W–701,* 654 F.2d 1164 (5th Cir.1981); *Hobbs v. Teledyne Movible Offshore, Inc.,* 632 F.2d 1238, 1241 (5th Cir.1980).

**12.** As did the district court, we decline to referee the dispute between Candies and Popich's insurer, American Employers Insurance Company, and remand that to the district court in the light of this opinion. If—and *if* is a very big one—anything is left of that side controversy, we point out several things. First, as the record reflects, American is an express beneficiary of Lirette's release. The unappealed judgment imposes absolute liability on both Popich and American for all of Exxon's losses (which are the subject of this appeal). Assuming American, Popich, or both satisfy that judgment, American under no circumstances could recover from Candies, one of its additional and named assureds.