590 So.2d 1220 (1991)
Donald J. McKINNEY and Joan B. McKinney
v.
SOUTH CENTRAL BELL TELEPHONE COMPANY and Louisiana Power & Light Company (Two Cases).
Nos. 90 CA 1064, 90 CW 0703.
Court of Appeal of Louisiana, First Circuit.
November 22, 1991.
Writ Denied February 7, 1992.
J. Thomas Anderson, Hammond and Phillip Hager, Metairie, for plaintiff-appellee.
Terri A. Maderson, Baton Rouge, for Hartford Ins. Co.
Philip E. Henderson, Houma, for Crescent Const. Co.
Jeffrey D. Schoen and William J. Crain, Covington, for South Cent. Bell.
Eugene Taggert, New Orleans, for Louisiana Power and Light Co.
Before WATKINS, CARTER and FOIL, JJ.
CARTER, Judge.
These consolidated actions arise out of a suit for personal injuries.

FACTS
Prior to August 6, 1987, South Central Bell Telephone Company (Bell) entered into a master contract for work with Crescent Construction Company (Crescent), wherein Crescent agreed to place and remove utility poles. On August 6, 1987, Donald J. McKinney, while employed by Crescent, was engaged in relocating a utility pole in Roseland, Louisiana. While on the pole, McKinney came in contact with electric *1221 power lines resulting in electrical shock and personal injuries.
On August 5, 1988, plaintiffs, Donald J. and Joan B. McKinney, filed suit for personal injuries. Named as defendants were Bell and Louisiana Power and Light (LP & L). LP & L answered plaintiffs' petition and filed a cross-claim against Bell and a third-party demand against McKinney's employer, Crescent. In its cross-claim against Bell, LP & L alleged, among other things, that it was entitled to indemnification and/or contribution from Bell for any alleged fault on the part of Bell for the accident and for alleged contractual liability to LP & L arising out of a joint use agreement between LP & L and Bell. Thereafter, Bell filed a third-party demand against Crescent, alleging that, pursuant to an indemnification and hold harmless clause in its master contract with Crescent, Crescent was required to defend and indemnify Bell against any and all liability arising out of its performance of the master contract.
Crescent agreed to defend and indemnify Bell on the main demand and on the tort claims by LP & L; however, Crescent refused to defend, indemnify, or hold Bell harmless on the contractual claims of LP & L. Crescent then filed a motion for summary judgment on the issue of whether Crescent's indemnification agreement with Bell required it to indemnify Bell with regard to Bell's contractual indemnity agreement with LP & L. After a hearing on the motion, the trial court rendered judgment in favor of Bell and against Crescent, denying Crescent's motion for summary judgment and refusing to find that the indemnification agreement in the master contract did not require Crescent to indemnify Bell on the contractual claims by LP & L. Thereafter, Crescent applied to this court for a writ of certiorari and/or review under docket number 90 CW 0703.
Bell then filed a motion for summary judgment on the same issue, contending that the indemnification clause between Bell and Crescent required Crescent to indemnify and hold Bell harmless from the contractual claims by LP & L. The trial court granted Bell's motion for summary judgment and determined that Crescent was required to defend and indemnify Bell from the contractual claims by LP & L. From this adverse judgment, Crescent appealed to this court under docket number 90 CA 1064. These matters were subsequently consolidated in this court. The sole issue for review is whether the trial court erred in granting Bell's motion for summary judgment and denying Crescent's motion for summary judgment upon finding that the indemnity agreement in the contract between Crescent and Bell required Crescent to defend and indemnify Bell against LP & L's cross-claim.

MOTION FOR SUMMARY JUDGMENT
A motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966 B; Penalber v. Blount, 550 So.2d 577, 583 (La.1989); Insley v. Titan Insurance Company, 589 So.2d 10, 13 (La. App. 1st Cir.1991); Liem v. Austin Power, Inc., 569 So.2d 601, 607 (La.App. 2nd Cir. 1990). The mover for summary judgment has the burden of affirmatively showing the absence of genuine issue of material fact, and any doubt as to the existence of such issue of material fact is to be resolved against the granting of the motion. Lytell v. Goodyear Tire & Rubber Co., 439 So.2d 542, 546 (La.App. 1st Cir.1983). A fact is material if its existence or non-existence may be essential to plaintiff's cause of action under the applicable theory of recovery. Penalber v. Blount, 550 So.2d at 583; American Bank & Trust Company in Monroe v. Vinson, 528 So.2d 693, 694 (La. App. 2nd Cir.1988). Facts are material if they potentially insure or preclude recovery, affect the litigants' ultimate success, or determine the outcome of the legal dispute. Liem v. Austin Power, Inc., 569 So.2d at 607.
On a motion for summary judgment, it is not the function of the trial court to determine *1222 or even inquire into the merits of the issues raised, and the weighing of conflicting evidence on a material fact has no place in the summary judgment procedure. The court must first determine whether the supporting documents presented are sufficient to resolve all material issues of fact. If the evidence presented is subject to conflicting interpretations or reasonable men might differ as to its significance, summary judgment is not proper. Only when reasonable minds must inevitably concur is a summary judgment warranted, and any doubt should be resolved in favor of a trial on the merits. Liem v. Austin Power, Inc., 569 So.2d at 607.
The issue presented in the instant case is whether the indemnification language of the master contract between Crescent and Bell provides indemnification for the cross claims of LP & L against Bell.
In Liem v. Austin Power, Inc., 569 So.2d at 608, the court, in discussing the interpretation of an indemnity contract, stated:
A contract of indemnity forms the law between the parties and therefore must be interpreted according to its own terms and conditions. The purpose of an indemnity agreement is to allocate the risk inherent in the activity between the parties to the contract.
The general rules which govern the interpretation of other contracts apply in construing a contract of indemnity. Interpretation of the contract is the determination of the common intent of the parties and when the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. The determination of the intention of the parties is the foremost requirement in the interpretation and construction of a contract. Agreements to indemnify are strictly construed and the party seeking to enforce such an agreement bears the burden of proof.
Recently, the Louisiana Supreme Court, in Home Insurance Co. of Illinois v. National Tea Co., 588 So.2d 361, 364 (La. 1991), addressed this same issue. In upholding an indemnity agreement contained in a lease, the court stated:
The law as stated in Polozola [v. Garlock, Inc., 343 So.2d 1000], supra, [(La.1977)], is well-settled. Polozola held:
A contract of indemnity whereby the indemnitee is indemnified against the consequences of his own negligence is strictly construed, and such a contract will not be construed to indemnify an indemnitee against losses resulting to him through his own negligent act, unless such an intention was expressed in unequivocal terms.
343 So.2d at 1003. Continuing, Polozola holds that the general rules which govern the interpretation of other contracts apply in interpreting indemnity contracts.
[A construction that renders a contract virtually nugatory] should be avoided in favor of one that gives the clause effect. La. Civil Code art. 1951 (1870).... When there is doubt as to the true sense of the words of a contract, they may be explained by referring to other words or phrases used in making the same contract. La. Civil Code art. 1948 (1870).... Further, all clauses of a contract should be interpreted the one by the other, giving to each the sense that results from the entire agreement. La. Civil Code art. 1955 (1870).... Finally, when there is anything doubtful in agreements, including indemnity agreements, we must endeavor to ascertain what was the common intention of the parties, rather than adhere to the literal sense of the terms. La. Civil Code art. 1950 (1870).

Id. When after applying the rules set forth above, i.e., the general rules governing the construction of contracts and interpreting the provisions of a contract as a whole, the intent of the parties to indemnify against negligence remains equivocal, a presumption or inference arises that the parties did not intend to hold the indemnitee harmless from such liability.

Soverign [Insurance, Co. v. Texas Pipe Line Co., 488 So.2d 982] supra, *1223 [(La.1986) ], held that a slightly different standard governs when the indemnitee's liability is based on strict liability rather than negligence. Simply put, Soverign held that the Polozola rule of strict construction, discussed above, is inapplicable to an agreement to indemnify against strict liability under LSA-C.C. Article 2317. Moreover, in that context, Soverign held that a court is called upon to further construe the agreement in light of everything that by law, custom, usage or equity is considered incidental to the contract in question or necessary to carry it into effect. 488 So.2d at 985.
Whether National's fault is based on negligence or strict liability, we find that the release provision clearly and expressly releases National from liability to Lessor for damages resulting from fire, whether caused by National's fault or otherwise. As plainly expressed in the lease, the parties' clear intent was to shift the risk of fire loss to Lessor's fire insurer. Lessor expressly released National from any claims for damages caused by fire. The only claims Lessor could have against National for damages caused by fire were claims based on National's fault. See LSA-C.C. Art. 2723. Significantly, in the release provision Lessor expressly `releases and discharges' from liability not only National, but also National's `agents.' Logic dictates that the only claims Lessor could have against National's `agents' were claims arising out of the fault of such `agents.' A finding that the release clause does not relieve National from damages resulting from fire caused by National's fault would render the clause virtually nugatory, contrary to the applicable rules of construction.
The parties' intent to shift the risk of loss by fire however caused to Lessor and its fire insurer is further evidenced by the express requirement in the lease that Lessor insure the leased premises. As the dissent in the court of appeal stated, `the fact that lessor agreed to provide coverage was not accidental, but was clearly bargained for during the drafting of the lease agreement. No one appears to seriously suggest that one side had an unfair bargaining advantage over the other.' Home Insurance [Co. of Illinois v. National Tea Co.] 577 So.2d [65] at 79 [(La.App. 1st Cir.1990) ]. Moreover, the Lessor did in fact procure fire insurance through Vigilant. [footnotes omitted].
In the instant case, the master contract between Bell and Crescent contains the following pertinent language:
ARTICLE 9. LOSSES: INDEMNITY OF TELEPHONE COMPANY
(a) The Contractor shall save harmless the Telephone Company, its directors, officers, employees and agents, from, and indemnify it and them against, all claims and suits for loss, injury or damage to any person or property whatsoever, including death, which may arise in or result from the performance of the work covered by this contract (whether or not such loss, injury or damage is attributed to the fault, failure or negligence of the Contractor, the Telephone Company, its directors, officers, employees or agents, or others, and whether occurring before or after completion of the work), or by failure of the Contractor to comply with any of the Articles herein, except as specifically set out in Section (c) of this Article 9, and from and against all claims, liens, and, or, suits for labor and materials furnished to the Contractor, and will defend on behalf of the Telephone Company, its directors, officers, employees and agents, any suits jointly against the Telephone Company, its directors, officers, employees and agents, and the Contractor, or against the Telephone Company alone, or against any director, officer, employee or agent of the Telephone Company, for or arising out of any or all of the aforesaid causes.
Article 10 of the master contract, which addresses liability insurance, provides as follows:
The Contractor shall at his own expense take out and at all times during the performance of the work hereunder maintain such public, contingent and employer's liability insurance as will protect *1224 the Contractor and the Telephone Company from claims under workmen's compensation acts and from any other claims for damage for personal injury, including death, and from claims for property damage, which may arise in or result from the performance of the work covered by this contract. Certificates evidencing such insurance shall be filed with the Telephone Company, and the coverage limits of such insurance shall be subject to its approval for adequacy of protection.
We find that the release provision clearly and expressly releases Bell from liability resulting from the performance of the work covered by the master contract. As plainly expressed in the master contract, the intent of Crescent and Bell was to shift the risk of loss arising from claims and suits for loss, injury or damage to any person or property which arises out of or results from the performance of the work covered by the contract to Crescent. The only claim Crescent could have had against Bell was for damages caused by Bell's negligence or strict liability in connection with the utility poles. A finding that the indemnification clause does not relieve Bell from the damages resulting from or arising out of the performance of the work covered by the master contract would render the clause virtually nugatory, contrary to the applicable rules of construction.
The parties' intent to shift the risk of loss or damages for losses and damages to persons or property resulting from or arising out of the performance of the work covered by the master contract is also evidenced by the requirement in the master contract that Crescent procure insurance to protect Bell as well as itself from worker's compensation or any other claims for damage for personal injury or property damage resulting from or arising out of the master contract. The inclusion of this requirement to obtain insurance was not accidental, but clearly bargained for during the drafting of the master contract.
However, our inquiry does not end here. In 1978, Bell and LP & L executed a joint use agreement. In that agreement, the companies set forth the allocation of liability between Bell and LP & L for damages resulting from the joint use of utility poles.[1] The agreement clearly provides that Bell is responsible for all of the damages, both property and personal injury, resulting from its sole negligence or fault and that LP & L is responsible for all of the damages, both property and personal injury, resulting from its sole negligence or fault. Additionally, the agreement provides that each company is liable for its own property damages and personal injuries to its own employees when Bell and LP & L are concurrently at fault or when the *1225 causes of such damages cannot be traced to either party's sole negligence. Moreover, Bell and LP & L agreed that if the damages for property damages or personal injuries result from the concurrent negligence of both parties, the damages would be shared equally by Bell and LP & L, regardless of the actual negligence of either party.
Crescent contends that the master contract with Bell does not encompass the liability resulting from Bell's agreement with LP & L to be responsible for one-half of the damages resulting from property damage or personal injuries caused by the concurrent negligence of Bell and LP & L regardless of the actual allocation of fault. Although we could find no Louisiana jurisprudence addressing this situation, and the parties did not direct us to any, we find the rationale followed by the Fifth Circuit Court of Appeals in several cases is useful.
In Corbitt v. Diamond M. Drilling Co., 654 F.2d 329 (5th Cir.1981), the court was presented with a situation similar to the situation in the instant case. In Corbitt, Shell Oil Company had entered into a workover contract with Diamond M. Drilling Company under which Diamond agreed to furnish labor, materials, and equipment for certain drilling operations. Under the contract, Shell agreed to indemnify Diamond against any and all claims brought by Shell's employees, agents, invitees, or subcontractors for personal injuries arising out of the work performed by Diamond, and Diamond made a reciprocal agreement to indemnify Shell for claims brought by its own employees, agents, or invitees.
Shell also entered into an agreement with Sladco, Inc., another independent contractor, to furnish personnel, equipment, and supplies for casing services. In this agreement, Sladco agreed to defend and to indemnify Shell against "all claims, suits, liabilities and expenses on account of injury or death of persons (including employees of Shell or Contractor, and subcontractor and their employees) or damage of property arising out of or in connection with performance of this Order, and not caused solely by Shell's negligence without any contributory negligence or fault of Contractor or any subcontractors."
A Sladco employee was subsequently injured on a Diamond drilling rig. The employee filed suit against Diamond as owner of the equipment he was using at the time of his injury. Diamond filed a third-party demand against Shell seeking indemnity under the workover contract. Shell then filed suit against Sladco under its indemnification agreement with Sladco. Sladco responded with a motion for summary judgment, which the trial court granted, finding that the indemnification agreement did not require Sladco to indemnify Shell for Shell's contractual liability to Diamond.
Although the court determined that federal law, and not Louisiana state law, controlled, its recitation of federal law is consistent with the Louisiana Supreme Court's interpretation of a contract of indemnity.[2] In Corbitt, the court noted that, under the law, an indemnitor is entitled to notice that under his agreement he may be called upon to pay damages caused by the sole negligence of his indemnitee and that this same rationale is applicable when a party seeks to shift his contractual liability to a third party.
*1226 In such cases, the court held that the indemnitee is entitled to express notice that the indemnitor may be required to pay damages for the liability of a third party assumed in an agreement between the indemnitee and the third party. Accordingly, because the purchase order did not expressly provide that Sladco would indemnify Shell for Shell's contractual liability to third persons, Sladco was not liable to indemnify Shell for its liability to Diamond. The court noted that Shell's liability to Diamond was not on account of personal injury, but because of its agreement to indemnify Diamond under the workover contract.
In Foreman v. Exxon Corporation, 770 F.2d 490, 494-95 (5th Cir.1985), Exxon Corporation contracted with Diamond M. Drilling and Offshore Casing Crews, Inc. to perform services upon its platform. The contract between Exxon and Offshore contained an indemnification provision by which Offshore agreed to indemnify and hold Exxon harmless from:
"[A]ny and all claims, demands and causes of action of every kind which may be brought against them by an employee of Contractor [Offshore] ... where:
(a) The personal injury, illness, death or loss of services or damages to or loss of property in any way results from the willful or negligent acts or omissions of Contractor, Contractor's agents, employees representatives, or subcontractors, whether or not such personal injury, illness, death or loss of or damage to property arose out of the joint and/or concurrent negligence of Exxon, its agents, employees or representatives and/or the unseaworthiness of any vessel...." (emphasis added by 5th Circuit).
The court in Foreman applied Louisiana law and determined that the agreement between Exxon and Offshore required Offshore to indemnify Exxon for the amount for which Exxon was liable to Offshore's employee. However, the court did not require Offshore to indemnify Exxon for the amounts Exxon owed pursuant to Exxon's contract of indemnity with Diamond. Similar to the agreement in Corbitt, the agreement between Exxon and Offshore provided for the indemnification of all claims, demands, and causes of action for injuries and death or illness of persons resulting from the willful or negligent actions or omissions of Offshore. In interpreting this agreement, the court determined that indemnification was limited to claims based upon tortious and not contractual injury. The court again, as it did in Corbitt, refused to interpret the phrase "all claims" to include contractual claims when that phrase was limited by language requiring some claim based on personal injury. Accordingly, the court determined that the agreement did not require that Offshore indemnify Exxon for Exxon's contractual liability to Diamond.
Bell contends that Lirette v. Popich Bros. Water Transport, Inc., 699 F.2d 725 (5th Cir.1983), required an indemnitor to indemnify an indemnitee for "contractual liabilities of the indemnitee even when the indemnification failed to specifically refer to the contractual liabilities of the indemnitee." At first blush, Bell appears to be correct; however, Lirette is clearly distinguishable from the instant case.
Lirette involved the interpretation of two contracts. In one contract, Popich Brothers Water Transport, Inc., the owner, agreed to indemnify and hold Otto Candies, Inc., the charterer, and Exxon Corporation harmless from injury or death claims by Popich employees unless caused by the sole negligence of the charterer. In the other contract, Candies agreed to indemnify Exxon against claims for injury to or death of Exxon's employees or employees of parties other than Candies resulting from willful or negligent acts of Candies or its agents, even though the injury or death arose from the joint negligence of Exxon, its agents, or the unseaworthiness of any vessel of Candies or Exxon. The distinguishing aspect of this case is that in the Popich/Candies agreement Popich agreed to indemnify not only Candies but Exxon as well. In Candies' claim against Popich, Popich was not being subjected to liability arising from and imposed by a completely separate contract between two outsiders, but was being called upon to make good its express contractual *1227 obligation to hold Candies harmless from claims arising out of the operation of the vessel.
After carefully reviewing the law, we find that, because the agreement between Bell and Crescent did not expressly contemplate that Crescent would indemnify Bell for Bell's contractual liability to LP & L, Crescent is not liable to indemnify Bell for its contractual liability, if any, to LP & L.[3]
For these reasons, we find that the trial court erred in denying Crescent's motion for summary judgment and in granting Bell's motion for summary judgment. Crescent's writ application is hereby granted. The judgment denying Crescent's motion for summary judgment is reversed, and judgment is rendered herein in favor of Crescent and against Bell, finding that Crescent did not agree to indemnify and hold Bell harmless from contractual liability to LP & L, and, as such, Crescent is not liable to Bell for its contractual liability to LP & L. The judgment granting Bell's motion for summary judgment is reversed. The matter is remanded to the trial court for further proceedings consistent with the views expressed herein. Bell is cast for all costs.
WRIT GRANTED, JUDGMENT REVERSED AND RENDERED. JUDGMENT REVERSED ON APPEAL. REMANDED.
NOTES
[1] Article XV of the joint use agreement provides as follows:

When liability is incurred or claim is made against either or both of the PARTIES hereto for damages to property of either PARTY or property of other persons, and/or for injuries (including death) to the employees of either PARTY or injuries (including death) to other persons, arising out of or in connection with the joint use of poles under this Agreement, or due to the proximity of the wires and fixtures of the PARTIES hereto attached to the jointly used poles covered by this Agreement, the liability therefor, as between the PARTIES hereto, shall be as follows:
A. Each PARTY shall be liable for all damages to property and/or injuries (including death) to persons caused solely by its negligence or solely by its failure to comply at any time with the specifications herein provided for, and such PARTY so liable shall hold harmless and indemnify the other PARTY from and against any and all losses, damages, expenses, or other costs arising out of or resulting from any claim for such property damage, and/or bodily injury (including death).
B. Each PARTY shall be liable for all property damage to its own property and/or bodily injury (including death) to its own employees which are caused by the concurrent negligence of both PARTIES hereto or which are due to causes that cannot be traced to the sole negligence of the other PARTY.
C. Each PARTY shall be liable for one-half (½) of all damages, losses, expenses or other costs arising out of or resulting from property damage to property not belonging to either PARTY and/or arising out of or resulting from bodily injury (including death) to persons other than employees of either PARTY, which said property damage and/or bodily injury (including death) are caused by the concurrent negligence of both PARTIES hereto or which are due to causes that cannot be traced to the sole negligence of either PARTY.
[2] In Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 333 (5th Cir.1981), the court set forth the following:

A contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage. Thus, for example, it is widely held that a contract of indemnity will not afford protection to an indemnitee against the consequences of his own negligent act unless the contract clearly expresses such an obligation in unequivocal terms. A contract to indemnify another for his own negligence imposes an extraordinary obligation. Thus an indemnitor is entitled to express notice that under his agreement, and through no fault of his own, he may be called upon to pay damages caused solely by the negligence of his indemnitee. (citations omitted).
[3] We note that the allocation of delictual liability between Bell and LP & L will only be an issue if neither is solely at fault and both are concurrently at fault. Under these conditions, the joint use agreement requires that Bell pay for 50% of the damages and LP & L pay for 50% of the damages. If the actual apportionment of fault reveals that Bell's fault is greater than 50% under the master contract, Crescent pays 50% of the damages apportioned to Bell. The remaining 50% is the obligation of LP & L under the joint use agreement. If, however, Bell's fault is less than 50% under the master contract, Crescent pays the damages for Bell's actual percentage of liability, Bell pays in excess of its actual fault up to 50%, and LP & L pays 50% of the damage.