722 F.2d 1170
 1985 A.M.C. 606
 Vicki E. MILLS, Plaintiff,
The Home Indemnity Company, Intervenor,
v.
ZAPATA DRILLING COMPANY, INC., et al., Defendants-Appellees,
Louisiana Casing Crew and Rental Tool Corporation,
Third-Party Defendant-Appellant.
 No. 81-3800.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 15, 1983.
 
 1
 Bailey & Leininger, Metairie, La., B. Ralph Bailey, Metairie, La., for third-party defendant-appellant.
 
 
 2
 Montgomery, Barnett, Brown & Read, Wood Brown, III, New Orleans, La., for CNG Producing Co. and Zapata Drilling Co.
 
 
 3
 Appeal from the United States District Court for the Eastern District of Louisiana.
 
 
 4
 Before REAVLEY and JOHNSON, Circuit Judges, and WYZANSKI*, District Judge.
 
 WYZANSKI, District Judge:
 A. DESCRIPTION OF APPEAL
 
 5
 This is an appeal from the district court's October 15, 1981 judgment which has only two operative paragraphs: (1) one ordering judgment "in favor of third party plaintiff, CNG Producing Co., and against third party defendant, Louisiana Casing Crew & Rental Tool Corporation for indemnity in the sum of $200,000 being that portion of the settlement of the principal claim paid by third party plaintiff, and for the costs and expenses of the principal claim," and (2) another ordering judgment "in favor of CNG Producing Co., Zapata Drilling Company, Inc. and Zapata Offshore Co., and against Louisiana Casing Crew and Rental Tool Corporation, dismissing its counterclaims."
 
 B. INTRODUCTORY PARAGRAPHS
 
 6
 In this multifaceted case we start with introductory paragraphs outlining the complicated structure of the case.
 
 
 7
 Arland Mills, a mud man, employed by Louisiana Casing Crew and Rental Tool Corporation ["Louisiana"], while working for that employer on a rig located on a platform, operated on the Outer Continental Shelf in the Gulf of Mexico by CNG Producing Co. ["CNG"], was killed by the negligent act of William Swisher, a driller employed by Zapata Drilling Company, Inc. ["Zapata"], who was working on the same platform.
 
 
 8
 Mills and Swisher were both working in connection with an enterprise for development of an oil and gas well in that part of the Gulf of Mexico adjacent to Louisiana, a development in which CNG was the general contractor and Louisiana and Zapata were subcontractors, pursuant to different written contracts containing different indemnification clauses.
 
 
 9
 Following Mills's death, his widow, Vicki Mills, became the representative of his estate. She, invoking the Outer Continental Shelf Lands Act, 43 U.S.C. Sec. 1331 et seq., on September 18, 1978 brought against Zapata what we shall denominate "the principal action," seeking to recover damages for her husband's death. Pursuant to the contract between them, Zapata tendered to CNG the opportunity to take over the defense of the action begun by Mrs. Mills. Then, out of an abundance of caution, on November 2, 1978 Zapata filed against CNG a third-party action alleging CNG's contractual obligation to indemnify Zapata if it were required to pay Mrs. Mills in the principal action.
 
 
 10
 On January 3, 1979 CNG filed against Louisiana its own third-party action (which for convenience we shall denominate a "fourth-party action"), alleging that Louisiana was under a contractual obligation to indemnify CNG if it were required to pay either Mrs. Mills in the principal action or Zapata in the third-party action.
 
 
 11
 On March 29, 1979 Home Insurance Co., the insurer of Louisiana, filed a petition to intervene in all of the actions; and on December 2, 1980, pursuant to a stipulation of all parties, the court granted the petition.
 
 
 12
 On December 8, 1980 the parties to the principal action had a settlement conference. According to the unchallenged recitals in the district judge's opinion, Mrs. Mills's claim in the principal action, "was settled, prior to trial, for four hundred five thousand dollars. Four hundred thousand dollars was paid, with one-half of that amount put forward by CNG and its insurer, United States Fidelity & Guaranty Company ("USF & G"), and one-half contributed by Louisiana Casing and its insurer, the Home Insurance Company. The agreement entered into between the parties provided that the dispute as to which of these defendants owed the settlement was reserved for submission to the Court. The agreement also provided that the party who would be cast in judgment would owe to the plaintiff the additional $5,000.00 not previously paid to her."
 
 
 13
 The record fails to show that there has ever been entered any judgment with respect to the settlement of the principal action. Nor indeed, so far as appears, has any estimate been made of the "costs and expenses of the principal claim."
 
 
 14
 On October 15, 1981 the district court entered the judgment recited in the first paragraph of the present opinion. In effect this was a judgment for CNG on what we have called its fourth-party complaint, and awarded CNG the $200,000 it had actually contributed to the settlement of Mrs. Mills's claim and also purported to award her an unspecified sum of money not attributable to the costs of the plaintiff in the third-party action, but, strangely, attributable to the costs of some undetermined person or persons who were party to Mrs. Mills's suit against Zapata. [The court's earlier opinion, dated October 6, 1981, states that if the parties cannot agree on the amount of those costs, then they shall be determined by the magistrate.]
 
 
 15
 C. THE CONTRACT UNDER WHICH CNG CLAIMS INDEMNIFICATION BY LOUISIANA
 
 
 16
 Having set forth the structural background of this case, we now turn to the critical facts. As to none of them is there any dispute.
 
 
 17
 CNG, the platform operator, had the master contract for the construction of the proposed oil and gas well, the enterprise during which Mr. Mills lost his life. As master contractor, CNG made with Louisiana (which as subcontractor was to do the casing work on the well) a contract which contained provisions with respect to indemnification of CNG. Those provisions are the very basis of what we have called the fourth-party action upon which the district court entered the $200,000 October 15, 1981 judgment now on appeal. And the text of those indemnification provisions is as follows:
 
 
 18
 Contractor [Louisiana] shall be responsible, and CNG shall never be liable, for personal injury to or death of any of Contractor's employees or the employees of Contractor's subcontractors, and Contractor agrees to indemnify and hold harmless CNG, any or all co-lessees of CNG who wholly or partially bear the cost of operations hereunder and any or all agents, directors, officers, employees, invitees, or servants of CNG or such co-lessees, against any and all claims, demands or suits (including, but not limited to, claims, demands or suits for bodily injury, illness, disease, death or loss of services, property or wages) which may be brought against CNG or against CNG and such co-lessees, whether one or more, or in which CNG or such co-lessees, whether one or more, or in which any or all such agents, directors, officers, employees, invitees or servants of CNG or of any such co-lessees may be named party defendant or parties defendant, as the case may be, by any employee of Contractor, subcontractor of Contractor, or by any employee of subcontractor of Contractor, or the legal representative or successor of any such employee, in anywise arising out of or incident to the work to be performed under this Contract, irrespective of whether such suits are based on the relationship of master and servant, third party, or otherwise, and even though occasioned, brought about or caused in whole or in part by the negligence of CNG, its agents, directors, officers, employees, servants, invitees, contractors, or subcontractors, or the agents, employees, directors, officers or servants of said contractors or subcontractors, or by the negligence of the said co-lessees of Owner, their agents, directors, officers, employees, servants, invitees, contractors or subcontractors, or the agents, employees, directors, officers, or servants of said contractors or subcontractors, or by the unseaworthiness or unairworthiness of vessels or craft. By way of illustration, but not by way of limitation, any person who is on Contractor's payroll and receives, has received, or is entitled to receive payment from Contractor in connection with the work performed or to be performed hereunder shall be the employee of Contractor, even though CNG reimburses Contractor for the amount paid or to be paid such employee. Contractor further agrees to investigate, handle, respond to, provide defense for, and defend any such claim, demand, or suit at its sole expense, and agrees to bear all other costs and expenses related thereto, even if it is groundless, false, or fraudulent, but Contractor may make such investigation, negotiation, and settlement of any such claim, demand, or suit as it deems expedient.
 
 
 19
 In its October 6, 1981 opinion--filed before its October 15 judgment--the district court held that CNG was entitled on its fourth-party complaint to recover from Louisiana the $200,000 CNG had contributed to the settlement for the following reasons: the subcontract provided that any invitee of CNG must indemnify CNG for any loss CNG sustained as a result of a payment made on account of the death on the CNG platform of any employee of such invitee; Zapata was such an invitee; and CNG had contributed (through its insurer USF & G) $200,000 to pay Mrs. Mills for the death of her husband while on CNG's platform.
 
 D. APPEALABILITY
 Fed.R.Civ.P. 54(b) provides:
 
 20
 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment .....
 
 
 21
 Inasmuch as in this case there has been no judgment entered upon either the principal action or the third party complaint, and the district court has not made "an express determination that there is no just reason for delay," the technical requirements of the aforesaid rule have not been met and, in strictness, we would be warranted in concluding that as yet this is an unappealable case.
 
 
 22
 However, we read the record as though the district court (1) had entered in the principal action a judgment in the amount of $405,000 for the plaintiff Vicki Mills against Zapata, CNG and Home Insurance Co. and all other parties defendant or intervening; and (2) had left unadjudicated the third party complaint of Zapata against CNG; and (3) had dismissed with prejudice all other actions, third party actions, claims, counterclaims, and other pleadings of every kind.
 
 
 23
 We believe that the foregoing is consistent with the manifest intent of the district court, the parties and with the purpose of the rule. It is not necessary for us to enforce a mere technical, expensive, and burdensome compliance with a rule whose purposes have already been accomplished: viz., to assure the appellate court that a complicated case will not reach it in several pieces, subject to the risk that the bearing of one piece on another might not be rightly understood and the further risk that the appellate court might be required on separate occasions and even with separate panels to review more than once the same or closely related facts and issues.
 
 
 24
 Under our afore-described reading of the October 15, 1981 judgment of the district court we hold that from that judgment the appeals of Louisiana and Home Insurance Co. are properly before us.
 
 E. APPLICABLE LAW
 
 25
 The parties, the district court, and we agree that as a consequence of that provision of the Outer Continental Shelf Lands Act, now incorporated in 43 U.S.C. Sec. 1333(a), (interpreted by a myriad of cases, of which we need cite only Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981)), it is incontrovertibly settled that when there occurs an injury on an offshore oil drilling platform positioned over the Outer Continental Shelf in the Gulf of Mexico at a point adjacent to the State of Louisiana, it is Louisiana state law which governs the relevant rights and duties of persons injured in or in any way affected by the accident, including the rights and duties under indemnity provisions in contracts applicable to those injured or to others.
 
 
 26
 "[A] personal injury action involving events occurring on the Shelf is governed by federal law, the content of which is borrowed from the law of the adjacent State, here Louisiana." Ibid., at 481, 101 S.Ct. at 2876.
 
 F. SUBSTANTIVE RIGHT TO INDEMNIFICATION
 
 27
 We come to the alleged specification of error: the question presented is whether under Louisiana law CNG was entitled to be indemnified for the amount paid by it or its insurance company (for which CNG is admittedly entitled to make whatever claim is available to that insurance company) by the alleged indemnitor Louisiana.
 
 
 28
 So far as concerns the wording of the (already quoted) indemnity provision in the contract between CNG and Louisiana, we cannot fault the district court for its judgment that indemnification in full was required. The relevant contractual provision states that "Contractor [Louisiana] agrees to indemnify and hold harmless ... any or all co-lessees of CNG [i.e., including Zapata] ... and any or all ... invitees ... of CNG [including Zapata] ... against any and all claims ... in which such co-lessees ... or ... invitees ... of CNG [including Zapata, which was a co-lessee as well as an invitee of CNG] may be named party defendant ... by any employee [Arland Mills] of Contractor [Louisiana], ... or the legal representative [Vicki Mills] ... of any such employee, in anywise arising out of or incident to the work to be performed under this contract ..."
 
 
 29
 It is preposterous for Louisiana to argue that the indemnity agreement is ambiguous. The agreement fits like a French glove. As any wearer would know, it covers an invitee (which all parties agree that Zapata was) even if he is also a contractor (which all parties agree that Zapata also was). The opposite contention is frivolous. Anyone who has had a French or even a Louisiana relationship knows one may be an invitee and a contractor simultaneously with the same person.
 
 
 30
 There is no merit to the appellant's contention that "CNG is not entitled to indemnity from Louisiana Casing in the name of Zapata because it did not owe indemnity to Zapata." In the case at bar CNG or its insurer paid Mrs. Mills $200,000 it seems to settle not only her claim in the principal action against Zapata but also Zapata's claim in the third-party action against CNG. We say "seems" because we do not have the text of the settlement agreement before us, but its import is plain enough from the district court's opinion; and we may add since the record does not show that any judgment has been entered on either the principal action or the third-party action we take the position that entries on both actions of judgments protecting CNG and Louisiana from any payment beyond the $400,000 already paid (and the $5,000 remaining due to Mrs. Mills) were the intended quid pro quo for CNG's payment to Mrs. Mills of $200,000 and Louisiana's payment to her of an additional $200,000. Those circumstances underline the point that CNG and Louisiana obviously had reached a conclusion that CNG owed indemnity to Zapata. Such conclusion was entirely sound. As all parties and impliedly the district court agreed, the contract between Zapata and CNG explicitly required that if Zapata were sued on account of an injury which one of its employees caused to an employee of another subcontractor working on the same platform, then CNG would take over the defense of such suit and pay any adverse judgment.
 
 
 31
 Finally, the appellants contend that "if Louisiana Casing and CNG owed indemnity to Zapata they are solidary obligors of Zapata so that CNG is entitled only to contribution and not indemnity." We do not propose to expatiate on the Louisiana state law governing solidary obligors. Here it suffices to note that there was in this case no contract between Louisiana and Zapata, hence the appellant's citation of Hobbs v. Teledyne Movible Offshore, Inc., 632 F.2d 1238 (5th Cir.1980) (where each indemnitor had contracted directly with the indemnitee) is wholly irrelevant. What exists in this case is that (1) Louisiana is by contract an indemnitor of CNG and is by operation of law under the circumstances heretofore described in this opinion an indemnitor of Zapata, and (2) the Louisiana-CNG contract specifically provides (as appears in the quotation earlier set forth in this opinion) that "contractor [Louisiana] shall be responsible and CNG shall never be liable" for damages recoverable by an employee of Louisiana, or his representative, on account of an injury caused by the negligence of an employee of Zapata. Such a situation is neither on the basis of reason or authority any basis for applying the quite irrelevant rules which Louisiana applies in situations where contribution between contractual co-indemnitees is appropriate.
 
 
 32
 AFFIRMED.
 
 
 
 *
 District Judge of the District of Massachusetts, sitting by designation