REVISED JULY 1, 2002
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-30642
_____

RODNEY SUMRALL, Etc

                                        Plaintiff

        v.

ENSCO OFFSHORE CO

                                        Defendant

_____

SANTA FE ENERGY RESOURCES INC

                                        Plaintiff - Appellee

        v.

PREMIERE, INC; ET AL

                                        Defendants
PREMIERE INC

                                        Defendant - Appellant

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____
May 9, 2002
Before KING, Chief Judge, and REAVLEY and WIENER, Circuit Judges.

PER CURIAM:

    Plaintiff Santa Fe Energy Resources, Inc. seeks

indemnification from defendant Premiere, Inc. for a tort claim

filed by an injured employee of Premiere against a third-party

contractor of Santa Fe.  The district court granted summary

judgment in favor of Santa Fe.  For the following reasons, we AFFIRM.

## I.  FACTUAL AND PROCEDURAL HISTORY

On September 27, 1999, Rodney Sumrall, an employee of defendant Premiere, Inc. ("Premiere") was working on a drilling rig jack-up vessel owned by defendant Ensco Offshore Co. ("Ensco").  On that day, Sumrall was injured when a crane operator, an employee of Ensco, swung the basket of a crane carrying Sumrall into a pole, thus knocking Sumrall to the deck of the Ensco rig.  On September 18, 2000, Sumrall filed a tort action in federal district court against Ensco under the general maritime law.

At the time of the accident, plaintiff Santa Fe Energy Resources, Inc. ("Santa Fe") was the operator on the drilling operation.  Santa Fe had a contractual relationship with Ensco, in accordance with the terms of which Ensco would provide the drilling rig vessel and drilling services.  The Ensco-Santa Fe contract required indemnification by Santa Fe for claims brought against Ensco by employees of Santa Fe and of Santa Fe's contractors.  Santa Fe contracted separately with Premiere for Premiere to provide casing and other services on the same drilling operation.  The Premiere-Santa Fe contract likewise required some indemnification between the parties for claims

2

brought by their respective employees.  Premiere and Ensco had no contract between them.

The parties do not dispute that Santa Fe's contract with Ensco obligated Santa Fe to indemnify and defend Ensco against claims brought by any Premiere employee such as Sumrall. Pursuant to that agreement, Santa Fe did assume defense of Ensco against Sumrall's claim.  Then, pursuant to the indemnification agreement between Premiere and Santa Fe, Santa Fe demanded indemnification and defense in turn from Premiere because a Premiere employee filed the original tort suit.  Premiere refused.

Santa Fe filed suit to compel Premiere to indemnify Santa Fe pursuant to their contract.  Santa Fe and Premiere then filed cross-motions for summary judgment.  On April 12, 2001, the district court denied Premiere's motion.[1]  At the same time, the district court granted Santa Fe's motion, thus ordering Premiere to provide defense, indemnification, and attorney fees to Santa Fe.[2]  Premiere filed a motion for reconsideration of the summary

---

[1]    Prior to Santa Fe's suit, Ensco had filed a third-party claim demanding indemnification for obligations arising from Sumrall's claim based on the contract between Santa Fe and Premiere.  Ensco, Santa Fe, and Premiere cross-moved for summary judgment on Ensco's third-party demand.  On March 14, 2001, the district court consolidated Sumrall's and Ensco's claims.  On April 12, the court denied Ensco's motion for summary judgment and granted summary judgment in favor of Premiere, dismissing Ensco's third-party claim.  That judgment was not appealed.

[2]    The contract between Santa Fe and Premiere entitles Santa Fe to indemnity and defense from Premiere for covered

3

judgment in favor of Santa Fe, which the district court denied on May 9, 2001.[3] Premiere now timely appeals the district court's summary judgment in favor of Santa Fe.

## II. STANDARD OF REVIEW

This court reviews summary judgment de novo, applying the same standards as the district court. Chaney v. New Orleans Pub. Facility Mgmt., Inc., 179 F.3d 164, 167 (5th Cir. 1999). Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## III. PREMIERE'S AGREEMENT TO INDEMNIFY SANTA FE

### A. Premiere's Agreement to Indemnify Santa Fe for Contractual and Other Legal Duties

Premiere contends that our decision in Corbitt v. Diamond M. Drilling Co., 654 F.2d 329 (5th Cir. 1981), in which we denied indemnification to a contractor situated similarly to Santa Fe, controls the instant case and thus that the district court erred in finding that Premiere must indemnify Santa Fe. In Corbitt, we explained that a "contract of indemnity should be construed to cover all losses ... which reasonably appear to have been within the contemplation of the parties, but it should not be read to

---

obligations. Indemnity and defense are referred to under the umbrella term of indemnification henceforth in this opinion.

[3] On June 5, 2001, the district court entered final judgment pursuant to its April 12 summary judgment order and, for a second time, denied Premiere's motion for reconsideration.

4

impose liability for those losses ... which are neither expressly within its terms nor of such character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." Id. at 333. A close reading of Corbitt, however, indicates that the indemnification provision at issue in that case was less broadly drafted than, and thus is distinguishable from, the indemnification provision outlining Premiere's obligation to Santa Fe, which provision appears as Section 15.1 of the Premiere-Santa Fe contract. See id. at 331-34.[4] Moreover, recent decisions by this court in cases involving

---

[4]   Section 15.1 reads in relevant part:

   15.1  [Premiere] agrees to protect, defend, indemnify, hold, and save [Santa Fe] and its ... employees ... contractors and subcontractors, and all their ... employees ... harmless from and against all claims, losses, costs, demands, damages, suits, ... and causes of action of whatsoever nature or character ... and whether arising out of contract, tort, strict liability, unseaworthiness of any vessel, misrepresentation, violation of applicable law and/or any cause whatsoever, including, but not limited to, reasonable attorney's fees and other costs and expenses, without limit and without regard to the cause or causes thereof, which in any way arise out of or are related to this Contract (including, without limitation, the performance or subject matter of this Contract) and which are asserted by or arise in favor of [Premiere] or any of its agents, representatives, or employees, or [Premiere's] subcontractors or any of their employees (and/or their spouses or relatives) due to bodily injury, death, or loss of or damage to property, or any cause whatsoever ... whether or not caused by the sole, joint, and/or concurrent negligence, fault, strict liability, breach of contract, or legal duty of [Santa Fe] or any other party indemnified hereunder, the unseaworthiness of any vessel, or any cause whatsoever ....

5

provisions more analogous to Section 15.1, and which build on our reasoning in <u>Corbitt</u>, indicate that the district court correctly determined that Premiere owes indemnification to Santa Fe based on their agreement in Section 15.1.

In <u>Corbitt</u>, Shell Oil contracted with two companies, Diamond M. and Sladco, to work on a drilling operation. <u>Id.</u> at 331. When an injured employee of Sladco sued Diamond M. in tort, Diamond M. sought indemnification from Shell Oil pursuant to their contract. <u>Id.</u> Shell Oil then filed a third-party action seeking indemnification in turn from the employer of the injured plaintiff, Sladco, pursuant to their contract. <u>Id.</u> Thus, in <u>Corbitt</u>, Shell Oil was situated similarly to Santa Fe in the instant case. Likewise, defendant Diamond M. and the injured plaintiff's employer, Sladco, which maintained no contract between them, were situated similarly to Ensco and Premiere. In <u>Corbitt</u>, we agreed with the district court that Shell Oil was not entitled to indemnification from its contractor, Sladco, because the indemnification provision in the contract between Shell and employer Sladco restricted the scope of Sladco's duty to indemnify solely to those obligations sounding in tort. <u>Id.</u> at 333.[5] We reasoned that, although the underlying claim creating

_____

(emphasis added).

[5]    The indemnification agreement between Shell and Sladco at issue in <u>Corbitt</u> reads in relevant part:  "Contractor [Sladco] shall indemnify and defend Shell Oil Company ... against all

6

the obligation for which Shell Oil sought indemnification from Sladco sounded in tort, the obligation for which Shell sought indemnification itself was <u>contractual</u> in nature, as it arose from the agreement between Shell and Diamond M. <u>Id.</u> We declined to interpret the phrase "all claims" in the <u>Corbitt</u> provision to include such contractual obligations. <u>See</u> <u>id.</u> We noted that the language of the indemnification provision at issue in <u>Corbitt</u> made no mention of a duty to defend for obligations arising in contract, and thus we read the scope of that provision by its express terms, stating:

> .... Shell's liability to Diamond M is not on account of personal injury. Rather, it is on account of its agreement to indemnify Diamond M under [the drilling contract between them]. Since the [indemnification agreement] between Shell and Sladco does not specifically provide that Sladco assumes claims arising from Shell's own separate contractual obligations, such indemnification is not required.

<u>Id.</u> We further indicated that

> [t]he contract need not contain any special words to evince an intention to create a right of indemnity for independent contractual liabilities. We hold only that it must clearly express such a purpose. In this case, there is nothing in the contractual language itself or in the realities of the situation in which the parties executed [the indemnification agreement] which reflects any such intention.

<u>Id.</u> at 334.

---

claims, suits, liabilities and expenses <u>on account of injury or death of persons</u> (including employees of Shell or Contractor [Sladco] ...) ... arising out of or in connection with performance of this [contract] ...." 654 F.2d at 331 (emphasis added).

7

In contrast, the language of Section 15.1 of the contract between Santa Fe and Premiere indicates that the scope of employer Premiere's duty to indemnify Santa Fe is broader than was the scope of employer Sladco's duty to indemnify Shell Oil in Corbitt.[6]  Section 15.1 does include language similar to that in the provision at issue in Corbitt, by which Premiere owes a duty to indemnify for obligations arising in favor of Premiere employees "due to bodily injury" or "death."  However, unlike the provision at issue in Corbitt, Section 15.1 also includes language that clearly and expressly indicates Premiere's intent to indemnify Santa Fe for obligations "whether arising in ... tort" or "contract."  Moreover, Section 15.1 includes additional, rather expansive, language that broadens Santa Fe's entitlement to indemnification for "all claims ... of whatsoever nature or character ... whether or not caused by the ... legal duty of [Santa Fe] ...." (emphasis added).  Thus, Section 15.1 is distinguishable from the more narrowly drafted provision in Corbitt, and our reading of the more narrow provision in Corbitt

---

[6]  Premiere further asserts that this court's more recent decision in Foreman v. Exxon Corp., 770 F.2d 490 (5th Cir. 1985), in which we denied indemnification to a party situated similarly to Santa Fe, likewise indicates that the district court erred. However, as we noted in Foreman, the circumstances and provisions at issue in Corbitt and Foreman are materially "indistinguishable."  Id. at 494-99.  We further found in Foreman that "the reasoning in Corbitt [is] equally applicable to the instant case."  Id.  Premiere's reliance on Foreman, therefore, is misplaced for the same reasons that its argument based on Corbitt fails.

8

does not control.  Moreover, our reasoning in <u>Corbitt</u> suggests that Premiere owes indemnification to Santa Fe in the instant case for Santa Fe's contractual or legal duty to indemnify Ensco against Sumrall's injury claim.

**B.   Premiere's Agreement to Indemnify Santa Fe's Contractors and Subcontractors**

Additional language in Section 15.1, which language did not appear in the provision at issue in <u>Corbitt</u>, even more compellingly indicates that Premiere owes indemnification to Santa Fe in the instant case.  Specifically, Section 15.1 expressly indicates Premiere's intent to indemnify not only Santa Fe, but also Santa Fe's "contractors and subcontractors" for the covered obligations.  Contrary to Premiere's assertion that Premiere owes no duty to indemnify for obligations arising due to Santa Fe's contractual relationships with third parties, prior decisions by this court interpreting analogous indemnification provisions in like circumstances indicate that such language in Section 15.1 expresses clear intent by Premiere to indemnify Santa Fe for amounts paid due to an injury claim filed against Santa Fe's third-party contractor, Ensco.  In six cases since <u>Corbitt</u>, we confronted circumstances indistinguishable from those in <u>Corbitt</u> and the instant case in all material respects except that the indemnification provisions at issue -- unlike the provision in <u>Corbitt</u> but <u>like</u> Section 15.1 -- included agreement by a party such as Premiere to indemnify third-party contractors,

9

subcontractors, and/or invitees of a party such as Santa Fe. In all six cases, we found based on such language that the party situated similarly to Premiere owed indemnification to the party such as Santa Fe. See Demette v. Falcon Drilling Co., Inc., 280 F.3d 492 (5th Cir. 2002); Campbell v. Sonat Offshore Drilling, Inc., 27 F.3d 185 (5th Cir. 1994) ("Campbell II"); Campbell v. Sonat Offshore Drilling, Inc., 979 F.2d 1115 (5th Cir. 1992) ("Campbell I"); Babcock v. Cont'l Oil Co., 792 F.2d 1346 (5th Cir. 1986) (per curiam); Mills v. Zapata Drilling Co., Inc., 722 F.2d 1170 (5th Cir. 1983), overruled on other grounds, Kelly v. Lee's Old Fashioned Hamburgers, Inc., 908 F.2d 1218 (5th Cir. 1990) (per curiam); Lirette v. Popich Bros. Water Transp., Inc., 699 F.2d 725 (5th Cir. 1983).

In Campbell I & II, for example, after an employee of a casing services contractor was injured on a drilling operation, the employee sued the owner of the drilling vessel. See Campbell II, 27 F.3d at 186-87. The vessel owner and the casing services employer maintained no direct contractual relationship. Id. A party situated similarly to Santa Fe, Union Texas Petroleum ("UTP"), contracted separately with the casing services employer and the vessel owner for each to supply services on the UTP drilling operation. Id. Thus, the casing services employer of the injured plaintiff was situated similarly to Premiere, and the vessel owner was situated similarly to Ensco.

10

Pursuant to the contract between UTP and the defendant vessel owner, in which UTP agreed to indemnify and defend the vessel owner, UTP undertook defense of the vessel owner. UTP further impleaded the casing services employer. Id. at 187. In the contract between the casing services employer and UTP, the employer agreed to indemnify not only UTP, but also "contractors engaged by UTP, such as [the vessel owner,]" "'for injury to ... [the casing services employer's] employees ....'" Id. (emphasis added). In Campbell I, we had "enforced [the casing services employer's] indemnity obligation under the UTP/[employer] contract, affirming a ruling requiring [the employer] to defend and indemnify [both the vessel owner] and UTP." See Campbell II, 27 F.3d at 187 (describing Campbell I, 979 F.2d at 1115).

In Campbell II, however, the casing services employer contended that it did not owe full, but only half, indemnity under the circumstances and that UTP owed the other half. Id. The employer thus filed for contribution from UTP. Id. In rejecting that claim in Campbell II, and thus affirming our decision in Campbell I, we reasoned that the employer's "duty to indemnify [the vessel owner] flows from its contract with UTP" because the employer expressly agreed to indemnify contractors of UTP. Id. We further rejected an argument by the employer based on Corbitt, which is similar to the argument made by Premiere, contending that the employer owed no reimbursement of UTP because UTP "independently contracted to indemnify" the vessel owner.

11

Id.  In so doing, we noted that unlike in Corbitt, the employer in Campbell I & II "agreed with UTP to indemnify both UTP and [its contractor, the vessel owner]."  See id. (emphasis added). We stated that the employer "cannot insulate itself from paying its full indemnity obligation on the basis that UTP's liability to [the vessel owner] is contractual."  Id. at 188 (citing Lirette, 699 F.2d at 725).  We concluded that "[s]imilarly" to the employer of the injured plaintiff in Lirette, the employer's "duty to indemnify UTP fully for amounts UTP owes [the vessel owner] for the [injured employee's] claims arises from [the employer's] express undertaking to indemnify both UTP and [the vessel owner] [for] such losses.  The Corbitt argument fails." Id. (citing Lirette, 699 F.2d at 728).  Like the employer in Campbell I & II, Premiere expressly agreed to indemnify not only Santa Fe, but also Santa Fe's "contractors and subcontractors," thus including Ensco, for obligations that arise due to claims of injury brought by Premiere employees.  Consequently, under the consistent reasoning of this court, as in Campbell I & II, we conclude that Premiere is obligated to indemnify, and thus to reimburse, Santa Fe for any amounts owing for indemnification and defense provided by Santa Fe to Ensco on account of Sumrall's tort claim.  See also Demette, 280 F.3d at 504; Babcock, 792 F.2d at 1351-53; Mills, 722 F.2d at 1174-75; Lirette, 699 F.2d at 725.

In an unusually poor alternative argument, Premiere contends that even if it has a duty to indemnify Santa Fe for tortious,

12

contractual or any other type of obligations, the language by which it agrees to indemnify "from and against all claims ... which are asserted by or arise in favor of [Premiere] or any of its ... employees" limits its duty to indemnify. (emphasis added). Premiere contends that it owes indemnification for only those obligations flowing from actions filed directly against Santa Fe by Premiere or Premiere employees. Premiere thus asserts that any contractual obligation arising from Santa Fe's indemnification of Ensco is not included in Premiere's duty because neither Premiere nor any Premiere employee was party to any contractual claim filed directly against Santa Fe.

None of the indemnification provisions at issue in our Lirette line of decisions contains precisely the same "in favor of" language as that relied on by Premiere for this argument. The corresponding relevant language in the provision at issue in Lirette, for example, reads: "'Owner ... agrees to indemnify ... Charterer ... from any claims or suits resulting from injury or damage to Owner's ... employees ....'" 699 F.2d at 726 n.4. However, the presence of language that is similar, if not identical, to the "in favor of" language of Section 15.1 in the provisions at issue in Lirette and its progeny did not alter our findings in favor of the parties situated similarly to Santa Fe in those materially indistinguishable decisions. See, e.g., Lirette, 699 F.2d at 729; Campbell II, 27 F.3d at 186-88.

13

Consequently, we reject Premiere's preferred reading of the "in favor of" language in Section 15.1 as wholly specious.

The district court did not err in finding as a matter of law that Premiere owes indemnification to Santa Fe in the instant case based on the express language of their agreement in Section 15.1.

## IV. RECIPROCITY OF THE INDEMNIFICATION AGREEMENT

Premiere contends that its obligation to indemnify Santa Fe is more onerous than Santa Fe's corresponding obligation. Premiere thus argues that its indemnification agreement with Santa Fe is not reciprocal and therefore is unenforceable under the Longshore and Harbor Workers Compensation Act ("the LHWCA"), 33 U.S.C. § 905 (1999), which governs the agreement. Subsection 905(b) of the LHWCA prohibits indemnification by the employer of a longshoreman for a claim due to bodily injury brought by the employee against a vessel owner. 33 U.S.C. § 905(b).[7] Subsection 905(c) provides an exception, however, allowing indemnification by such an employer, in this case Premiere, so long as there is "reciprocal" agreement by the vessel owner, in this case Santa Fe, to indemnify the employer. 33 U.S.C.

---

[7] Section 905(b) reads in relevant part: "In the event of injury to a person ... caused by the negligence of a vessel, then such person ... may bring an action against such vessel ... and the employer shall not be liable to the vessel ... and any agreements or warranties to the contrary shall be void." 33 U.S.C. § 905(b).

14

§ 905(c).[8] Examination of the indemnification agreement between Premiere and Santa Fe indicates that the agreement is sufficiently reciprocal to satisfy the subsection 905(c) exception. Thus, the agreement is enforceable against Premiere pursuant to subsection 905(b).

Premiere first argues that Section 15.3 of its agreement with Santa Fe impermissibly enlarges Premiere's burden to indemnify beyond Santa Fe's burden in return. Premiere notes that in Section 15.3, Premiere agrees to indemnify Santa Fe against any claims arising on behalf of employees of Premiere, as well as against claims on behalf of employees of Premiere subcontractors. Premiere contends, however, that there is no similar provision obligating Santa Fe to indemnify Premiere on account of Santa Fe's third-party contractors or subcontractors.[9]

_____

[8]    Section 905(c) reads in relevant part:

.... Nothing contained in subsection (b) of this section shall preclude the enforcement ... of any reciprocal indemnity provision whereby the employer ... and the vessel agree to defend and indemnify the other for cost of defense and ... liability for damages arising out of or resulting from death or bodily injury to their employees.

33 U.S.C. § 905(c).

[9]    Section 15.3 reads in relevant part:

    15.3   In the event [Premiere] subcontracts any of the Work to be performed under this Contract, [Premiere] warrants that the agreements or Contracts with its subcontractors shall contain defense, indemnity, and hold harmless provisions equal to those set forth in Sub-clause 15.1 above in favor of [Santa

15

Contrary to Premiere's assertion, however, the language of the indemnification agreement, as outlined in Section 15.2, reveals that Santa Fe expressly and unconditionally agreed to indemnify Premiere against any claims arising on behalf of employees of Santa Fe's third-party contractors.  Section 15.2 reads in relevant part:

> 15.2  [Santa Fe] agrees to protect, defend, indemnify, hold, and save Contractor [Premiere] ... harmless from and against all claims ... and which are asserted by or arise in favor of [Santa Fe's] employees or [Santa Fe's] contractors or their employees, other than those parties identified in sub-clause 15.1, due to bodily injury ....

(emphasis added).  Thus, both Premiere and Santa Fe agreed to indemnify each other for claims brought on behalf of the employees of their respective third-party contractors (or in the case of Premiere, its subcontractors).[10]

---

> Fe].  Unless such agreements or contracts contain said provisions, any and all subcontractor personnel engaged in performing Work hereunder shall be deemed to be employees of [Premiere] for all the purposes of Sub-clause 15.1 hereof....

(emphasis added).

[10]  Although Section 15.2 refers only to Santa Fe's duty to indemnify on account of its "contractors," while Section 15.1 and Section 15.3 refer to Premiere's duty to indemnify on account of its "subcontractors," this difference does not undermine the reciprocity of the agreement.  The standard by which we judge the scope of an indemnification agreement is the reasonable contemplation of the parties.  See Corbitt, 654 F.2d at 333.  It was reasonable in this case for the parties to contemplate that, because Santa Fe was the operator on the drilling operation, and because Premiere was Santa Fe's contractor, then Santa Fe would likely only engage other third-party "contractors," but not

16

Premiere further contends, however, that Section 15.3 creates an additional obligation because it contains an undertaking by Premiere to obtain an express contractual undertaking by any Premiere subcontractor to indemnify Santa Fe. Premiere argues that because Santa Fe is not likewise required to obtain the same contractual undertaking by Santa Fe's contractors to indemnify Premiere and Premiere subcontractors, then Premiere's obligation to Santa Fe is more onerous. We fail to see how this undertaking creates any additional indemnification obligation on the part of Premiere.

We do see how Section 15.3 may result in an additional obligation on the part of a <u>subcontractor</u> of Premiere. However, regardless of whether Premiere obtains an additional agreement by any of its subcontractors to indemnify Santa Fe pursuant to Section 15.3, Santa Fe is already entitled to look to Premiere for -- and Premiere is obligated to provide -- indemnification against claims by employees of Premiere subcontractors pursuant to Section 15.1. Consequently, Section 15.3 in no way alters or enlarges Premiere's obligation to indemnify Santa Fe (or Santa Fe's contractors), and both Premiere and Santa Fe are entitled to look to each other for indemnification for claims brought by the

---

"subcontractors," while Premiere would engage third-party "subcontractors." We conclude, therefore, that despite this difference in the language, both Premiere and Santa Fe agreed reciprocally to indemnify each other against claims brought on behalf of their own employees, as well as against claims on behalf of employees of their respective third-party contractors.

employees of the respective third-party entities with which each might contract in turn.

We likewise reject Premiere's argument that the reciprocity of its indemnification agreement with Santa Fe is destroyed by the fact that Ensco did not agree in its contract with Santa Fe to indemnify any contractors of Santa Fe, such as Premiere. By the terms of Section 15.2, Premiere is entitled to indemnification from Santa Fe against claims brought against Premiere by Ensco employees. Thus, the fact that any contractor of Santa Fe such as Ensco does not agree to indemnify other contractors of Santa Fe has no effect on the reciprocity of the indemnification obligations running between Santa Fe and Premiere.[11]

In support of its argument that the indemnification agreement is not reciprocal, Premiere relies on a single, unpublished district court decision, Falcon Operators, Inc. v. P.M.P. Wireline Servs., Inc., Nos. Civ.A. 97-825, 97-2586, 1997

---

[11] Premiere further argues that because it has more employees than does Santa Fe, its exposure to claims for which it must indemnify is larger and, thus, that reciprocity is destroyed. This argument ignores the fact that both Premiere and Santa Fe have agreed to indemnify each other for an unspecified potential number of employees of their respective potential contractors. Moreover, we decline to count the number of employees engaged by an indemnitor on a drilling operation as a means of determining the scope of the potential indemnification obligation, just as we would be loathe to attempt to measure the comparative incompetence and propensity for negligent behavior of given indemnitors' employees as a means of gauging the scope of their respective obligations.

18

WL 610825, at *8-9 (E.D. La. Sept. 30, 1997). We note that Falcon Operators is not binding on this court. Moreover, we agree with Santa Fe that the provisions at issue in that case are distinguishable in that the groups of constituents affiliated with the parties that each agreed to indemnify were in greater disparity than is the case here. Likewise, the parties in that case agreed to indemnify against claims brought on behalf of groups of their affiliated constituents that were in greater disparity than is the case here. See id. Falcon Operators is thus distinguishable, and Premiere's reliance upon that case is unavailing.[12]

We find that the indemnification provisions of the Premiere-Santa Fe contract are sufficiently reciprocal that their agreement is enforceable under the LHWCA. The district court did not err, therefore, in finding as a matter of law that Premiere's agreement to indemnify Santa Fe is enforceable.

## V. CONCLUSION

---

[12] The district court in Falcon Operators based its determination that the agreement lacked reciprocity in some part on one additional finding: that the employer of the injured plaintiff in that case was required to obtain insurance, but that the oil company party to the indemnification agreement was not required to do the same. We have determined that differing insurance obligations do not create additional indirect liability sufficient to implicate the prohibitions of subsection 905(b). See Voisin v. O.D.E.C.O. Drilling Co., 744 F.2d 1174, 1176-78 (5th Cir. 1984). Thus, we find that any difference in the insurance obligations owed between Premiere and Santa Fe does not undermine the reciprocity of their indemnification agreement.

19

For the foregoing reasons, the district court's summary judgment in favor of Santa Fe is AFFIRMED.