United States Court of Appeals
Fifth Circuit

**F I L E D**

April 10, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-30614
_____

ST. PAUL SURPLUS LINES INSURANCE COMPANY,

Plaintiff-Appellant,

v.

HALLIBURTON ENERGY SERVICES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Eastern District of Louisiana
_____

Before HIGGINBOTHAM, DAVIS and STEWART, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This case presents the legal issue whether the undertaking of Halliburton Energy Services, Inc. ("Halliburton") to indemnify the well owner LLOG Exploration Company ("LLOG") in this case included an obligation by Halliburton to reimburse LLOG for sums LLOG was required to pay under a separate contract to a third party, R&B Falcon Drilling USA, Inc. ("Falcon"). Based on our case law and the language of the indemnity provisions included in the relevant contracts, we answer this question in the affirmative and reverse the judgment of the district court.

I.

1

LLOG develops and operates oil and gas properties, and was provided contractual liability insurance coverage for operation of its wells by St. Paul.  In March of 2001, LLOG contracted with Falcon to provide a drill barge to drill an LLOG well off the coast of Venice, Louisiana.  The contract between LLOG and Falcon ("Drilling Contract") provided that LLOG would hold Falcon harmless *inter alia* for any personal injury claims asserted against Falcon by LLOG's employees or invitees.  The Drilling Contract also required that LLOG provide a number of services usually provided by third parties required to drill the well.  Relatedly, LLOG and Halliburton entered into a Master Service Contract ("Service Contract") for the performance of some of those services.  The LLOG/Halliburton Service Contract required Halliburton to indemnify LLOG and its invitees, which included Falcon, against claims by Halliburton employees.[1]

Gilbert Goldman, a Halliburton engineer and LLOG invitee, was injured at the well site onboard the Falcon barge when it capsized in March of 2001.  Goldman sued LLOG and Falcon to recover damages for those injuries, and Falcon demanded that LLOG defend and indemnify Falcon for this claim pursuant to the Drilling Contract.  LLOG initially rejected Falcon's demand and also requested that Halliburton defend and indemnify LLOG against

---

[1] The Service Contract was accompanied by a Rider executed by the parties which modified portions of its indemnity provisions.

Goldman's claims pursuant to the indemnity provisions of the Service Contract. Halliburton expressed some doubt about the scope of the indemnity provision, but in two separate letters in September and October of 2001, Halliburton counsel reaffirmed that Halliburton would "undertake the defense of LLOG in accordance with the agreement terms," and that it would "defend and indemnify LLOG in this lawsuit as per the contract."

In January of 2002, Falcon instituted a limitation of liability proceeding in the Eastern District of Louisiana, and included a contractual indemnity claim against LLOG and St. Paul. Halliburton answered on behalf of LLOG, denying responsibility on Falcon's contractual indemnity claim.

Falcon settled Goldman's claims in January 2003 for $550,000, and sought reimbursement from LLOG and St. Paul under the indemnity provisions of the Drilling Contract. St.Paul and LLOG withdrew their earlier denial of liability and reimbursed Falcon the $550,000 paid to Goldman.[2] After LLOG and St. Paul

---

[2] LLOG initially rejected Falcon's demand for indemnity on the grounds that the Drilling Contract failed the "express negligence test," which provided that a party cannot be indemnified for its own negligence when the indemnity contract does not so provide expressly. Although LLOG and St. Paul initially refused to reimburse Falcon, they relented after this court concluded that the express negligence test would not operate to preclude claims asserted against Falcon based upon Falcon's negligence in East v. Premier, Inc., a case involving an identical contract between Falcon and LLOG. See 98 Fed. Appx. 317, 2004 WL 1114441 (5th Cir. May 12, 2004).

3

agreed to reimburse Falcon, St. Paul made demand under the terms of the LLOG/Halliburton Service Contract for Halliburton to pay the settlement sum on behalf of LLOG to Falcon. Halliburton rejected that demand, asserting that the Service Contract did not obligate Halliburton to indemnify LLOG against Falcon's contractual claims. St. Paul then filed suit against Halliburton seeking reimbursement of the $550,000 settlement on the basis that Halliburton was contractually obligated to indemnify LLOG and LLOG's invitees, including Falcon, for sums paid on account of injuries to Halliburton employees.[3]

Both Halliburton and St. Paul filed motions for summary judgment. The District Court granted the motion filed by Halliburton and denied St. Paul's motion. The District Court observed that the Service Contract did not expressly require Halliburton to indemnify LLOG against third party contract liability. Because Halliburton did not expressly agree to indemnify LLOG for contractual claims, the District Court concluded that Halliburton was not responsible for the defense or indemnity obligations assumed by LLOG in its separate contracts with third parties. This appeal followed.

---

[3] St. Paul also argues that Halliburton is estopped from withholding reimbursement due to its representations and action in defending LLOG in the litigation. Because we conclude that Halliburton is obligated to indemnify LLOG under the Service Contract, we need not address the estoppel claim.

4

The parties agree that the interpretation of the contract at issue in this case is governed by general maritime law. A district court's grant or denial of summary judgment is reviewed *de novo*, applying the same standard as the district court. See Gowesky v. Singing River Hospital System, 321 F.3d 503, 507 (5th Cir. 2003). Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PRO. 56.

III.

The contractual relationship between LLOG and Halliburton is governed by two documents: (1) the Service Contract, and (2) the Service Contract Rider. The Service Contract begins by defining the parties:

> THIS CONTRACT, made and entered into on the above date by and between LLOG EXPLORATION COMPANY (hereinafter referred to as "LLOG") and HALLIBURTON COMPANY, its divisions HALLIBURTON SERVICE and HALLIBURTON RESERVOIR SERVICES, and its subsidiaries HALLIBURTON LOGGING SERVICE, INC., and OTIS ENGINEERING COMPANY (hereinafter referred to as "Contractor").

The indemnity provision, however, begins by stating that the references to LLOG in that section shall include certain other parties. Paragraph 4(a) provides:

For the purposes of this Section any reference to LLOG shall include LLOG and any or all co-lessees of LLOG who wholly or partially bear the cost of operations hereunder and any or all agents, directors, officers, employees or invitees of LLOG or such co-lessees, or any or all of such parties.

Although Paragraph 4(a) was not modified by the Rider, the remainder of the indemnity provision was replaced with revised and additional language. Paragraph 4 of the Rider provides, in pertinent part:

Section 4. IMDEMNITY, paragraphs (b) and (c) shall be amended and paragraphs (d), (e), (f), (g), (h) and (i) added to read:

(b) Contractor shall be responsible, and LLOG shall never be liable, for property damage or personal injury to or death of Contractor's employees or the employees of Contractor's subcontractors and Contractor agrees to indemnify and hold LLOG harmless against any and all such claims, demands or suits which may be brought against LLOG by any such party, or the legal representative or successor of any such employee, in anywise arising out of or incident to the work to be performed under this contract by Contractor, or Contractor's subcontractors, irrespective of whether such claims, demands, or suits are based on the relationship of master and servant, third party, or otherwise, the unseaworthiness or unairworthiness of vessels or craft, or the negligence or strict liability, in whole or in part, of LLOG.

St. Paul and LLOG argue that this provision obligates Halliburton to indemnify LLOG for sums LLOG paid pursuant to its contractual indemnity obligations to Falcon. According to St. Paul, this is required because LLOG's payment was occasioned by (1) the injury to Goldman, a Halliburton employee, and (2) LLOG's required payment to an LLOG invitee within the meaning of Paragraph 4(a).

6

Halliburton does not dispute Falcon's invitee status, but instead argues that the indemnity provision does not provide express notice that Halliburton would be obligated to indemnify LLOG against indemnity claims owed as a result of LLOG's contracts.[4]

The district court granted summary judgment in favor of Halliburton, relying on our decisions in Foreman v. Exxon Corp. and Corbitt v. Diamond M. Drilling Co., both of which held that "express notice is required where a party seeks to shift his contractual liability to indemnify a third party," and that contractual language creating an indemnity obligation "for injury to or death or illness of persons" gave notice only of claims based on tortious, not contractual, injuries. Foreman v. Exxon Corp., 770 F.2d 490, 496-97 (5th Cir. 1985); Corbitt v. Diamond M. Drilling Co., 654 F.2d 329, 333-34 (5th Cir 1981).[5] Because

---

[4] Halliburton also argues that the Service Contract Rider modified the contract to effectively remove "invitee" from Paragraph 4(a) of the Service Contract. However, the Service Contract Rider specifically enumerates which subsections of Paragraph 4 are to be modified, and leaves 4(a) untouched. The district court refused to read the Service Contract Rider as impliedly removing a class of potential indemnities from the Service Contract, and we agree with that reading.

[5] The conclusion that phrases such as "for injury to or death or illness of persons" is limited to tortious injuries is in apparent conflict with our decision in Lirette. In that case, we noted that "[s]ince indemnity is triggered by claims or suits 'resulting from injury or damage to [Popich's] employees,' the contractual obligation is operationally prescribed with no distinction being made between so-called contractual or so-called tortious liability." Lirette, 699 F.2d at 728. However, because we conclude that Halliburton's indemnity obligation arises from the inclusion of invitees in the indemnity provision, we need not resolve this apparent conflict.

7

the Halliburton/LLOG Service Contract required indemnification for "property damage or personal injury to or death of [Halliburton's] employees," and does not specifically include liability arising from contract, the district court found that the Service Contract did not require Halliburton to indemnify LLOG against Falcon's claims, despite the fact that Falcon's claims were, in turn, based on a personal injury to a Halliburton employee.

In addition to our decisions in Foreman and Corbitt, we have addressed the legal issue presented in today's case on at least four occasions. See Sumrall v. ENSCO Offshore Co., 291 F.3d 316 (5th Cir. 2002); Campbell v. Sonat Offshore Drilling, Inc., 27 F.3d 185 (5th Cir. 1994); Mills v. Zapata Drilling Co., 722 F.2d 1170 (5th Cir. 1983), overruled on other grounds, Kelly v. Lee's Old Fashioned Hamburgers, Inc., 908 F.2d 1218 (5th Cir.1990)(per curiam); Lirette v. Popich Bros. Water Transport, Inc., 699 F.2d 725 (5th Cir. 1983).

In Lirette, Popich Bros. Water Transport, Inc. ("Popich"), owned and operated a vessel time-chartered to Otto Candies, Inc. ("Candies"). The contract between Popich and Candies required that Popich indemnify Candies, as well as its "affiliated companies and anyone for whom the vessel may be working" against

8

personal injury claims made by Popich employees.[6] Candies in turn time-chartered the vessel to Exxon for transportation between shore and various drilling platforms. The contract between Candies and Exxon required that Candies indemnify Exxon against personal injuries made by either Candies or Popich employees. Lirette, a Popich employee, was the captain of the vessel and was injured in an accident. Lirette brought suit against Exxon and Candies seeking damages for those injuries. Candies was obligated to indemnify Exxon under the Candies/Exxon contract, and sought reimbursement of those sums paid to Exxon from Popich under the Popich/Candies contract.

The language describing the claims covered by the provision in Lirette is substantially similar to the language in the indemnity provision in Corbitt. Both refer to "all claims" resulting from or on account of injury, death, or property damage. The one significant difference, however, is that the provision in Lirette expressly included "affiliated companies and anyone for whom the vessel may be working," including Exxon, as

---

[6] The charter between Popich and Candies provided:
Owner [Popich] agrees to indemnify and hold Charterer [Candies], its affiliated companies [Exxon], and anyone for whom the vessel may be working harmless from any claims or suits resulting from injury or damage to Owner's [Popich's] employees, Charterer's [Candies'] employees or third persons or property arising out of, or in any way connected to the operation of the vessel under this charter, unless caused by the sole negligence of Charterer [Candies], its agents or employees.
Lirette, 699 F.2d at 726 n. 4.

third-party indemnitees.  Popich argued that this meant that Popich might have an indemnity obligation directly to Exxon for its own liability to Lirette, but that the provision did not require Popich to indemnify Candies for its own contractual obligation to Exxon, which arose out of the separate charter between Candies and Exxon, and not the charter between Popich and Candies.  This court disagreed.  We concluded:

> Popich was not, as in Corbitt, being subjected to a liability arising from and imposed by a completely separate contract between two outsiders.  Rather, it was called upon to make good its contractual obligation to hold Candies (and Exxon) harmless from claims, suits or damage "arising out of, or in any way connected [with] the operation of the vessel under this charter." Popich's obligation to reimburse Candies for amounts due Exxon arose, not because of the separate agreement Candies had with Exxon, but because of Popich's express undertaking to make good to Exxon all such losses. Candies acting as a conduit did not alter that obligation.

Id. at 728.  Because Exxon was a member of the class of "affiliated companies" named in the indemnity provision, Popich was obligated to indemnify Exxon, and Popich could not escape its obligation merely because Candies acted as a "conduit" for indemnification.

We subsequently applied Lirette's conduit principle in Mills, 722 F.2d at 1175, Campbell, 27 F.3d at 187-88, and Sumrall, 291 F.3d at 320.  In particular, Mills addressed a factual and legal scenario essentially identical to this case, including the language in the relevant contract provisions

10

identifying invitees as indemnitees and describing the covered claims. In Mills, CNG Producing Co. hired the Zapata Drilling Co. to furnish drilling equipment to drill CNG's wells. CNG also hired Louisiana Casing Crew and Rental Tool Corp., to furnish casing services. Zapata and Louisiana did not contract with each other. Mills, a Louisiana employee, was killed by the negligent act of a driller employed by Zapata, and his estate brought suit against Zapata. Zapata filed a third-party action against CNG seeking indemnity under the terms of its contract, and CNG then brought its own third-party action against Louisiana, seeking indemnification against its obligation to indemnify Zapata.

The indemnity provision at issue in Mills was unlike the provision in Corbitt, and like the provision at issue in this case, in that it specifically includes CNG's invitees as indemnitees.[7] Moreover, the language describing the types of

---

[7] The contract between CNG and Louisiana provided:

> Contractor [Louisiana] shall be responsible, and CNG shall never be liable, for personal injury to or death of any of Contractor's employees or the employees of Contractor's subcontractors, and Contractor agrees to indemnify and hold harmless CNG, any or all co-lessees of CNG who wholly or partially bear the cost of operations hereunder and any or all agents, directors, officers, employees, **invitees**, or servants of CNG or such co-lessees, against any and all claims, demands or suits (including, but not limited to, claims, demands or suits for bodily injury, illness, disease, death or loss of services, property or wages) which may be brought against CNG ... by any employee of Contractor, subcontractor of Contractor, or by any employee of subcontractor of Contractor, or the legal representative or successor of any such employee, **in anywise arising out of or incident**

suits, i.e., "irrespective of whether such suits are based on the relationship of master and servant, third party, or otherwise...," is identical to the provision in this case. Mills, 722 F.2d at 1172-73. The court concluded in Mills, as it had concluded in Lirette, that Zapata was an invitee of CNG within the meaning of the indemnity provision, and therefore, "Louisiana is by contract an indemnitor of CNG and is by operation of law under the circumstances described in this opinion an indemnitor of Zapata...." Id. at 1175.

LLOG's claim for indemnity from Halliburton under the Service Contract is functionally indistinguishable from CNG's claim for indemnity in Mills. Because Halliburton is obligated to indemnify both LLOG and Falcon for injuries to Halliburton employees, Halliburton's obligation to Falcon flows through LLOG where LLOG has already indemnified Falcon. Halliburton is therefore required to reimburse LLOG, and its insurer St. Paul, for the indemnity paid by LLOG to Falcon. Because this case is controlled by our decisions in Lirette, Mills, Campbell, and Sumrall, we reverse the judgment of the district court and render summary judgment in favor of St. Paul.

---

*to the work to be performed under this Contract, irrespective of whether such suits are based on the relationship of master and servant, third party, or otherwise....*

Mills, 722 F.2d at 1172-73 (emphasis added).

REVERSED and RENDERED.